**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Frederick J. Klorczyk III (State Bar No. 320783)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
            jsmith@bursor.com
            fklorczyk@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHY BASHAW, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| NISSAN NORTH AMERICA, INC. and NISSAN MOTOR CO., LTD., | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Cathy Bashaw ("Plaintiff") brings this class action against Nissan North America, Inc. ("NNA") and Nissan Motor Co., Ltd. ("NMC") (together, "Nissan" or "Defendants"), individually and on behalf of all persons in the United States who purchased, own, owned, lease or leased a 2015 or newer Nissan vehicle equipped with Forward Emergency Braking or Automatic Emergency Braking system (collectively the "FEB system"), including but not limited to the Nissan Rogue, Nissan Rogue Sport, Nissan Murano, Nissan Altima, Nissan Maxima, Nissan Armada, Nissan Pathfinder, Nissan Leaf, and Nissan Sentra (the "Class Vehicles") that were designed, manufactured, distributed, marketed, sold, and/or leased by Nissan.  The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel:

## NATURE OF THE ACTION

1.      This is a class action concerning a defect in the Forward Emergency Braking system featured in every Class Vehicle.  "This intelligent feature uses radar technology to monitor a vehicle's proximity to the vehicle ahead, giving the driver audible and visual display warnings to help the driver reduce the vehicle's speed if a potential frontal collision is detected.  If the driver fails to respond, the [Forward Emergency Braking] system can apply the brakes, helping the driver to avoid the collision or reduce the speed of impact if it is unavoidable."[1]

2.      However, Defendants wrongfully and intentionally concealed one or more defects in the Class Vehicles' front distance sensor, an integral component of the vehicles' FEB systems (the "FEB Defect").  The FEB Defect can cause the FEB system to falsely engage.  The FEB Defect can cause the Class Vehicles to detect non-existent obstacles, thereby automatically triggering the brakes and causing the Class Vehicles to abruptly slow down or come to a complete stop in the middle of traffic.  In addition to the false engagements, the FEB Defect can also cause the FEB system to deactivate itself, rending the feature unavailable to the vehicle's operator.  In such instances, the a warning flashes on the dashboard:  "Front radar unavailable due to

---

[1] https://www.nissanusa.com/experience-nissan/news-and-events/car-safety-features-technology.html (last visited November 27, 2018).

obstruction." In either scenario, the FEB system is not a safety feature, but rather an unpredictable safety hazard.

3.     The FEB Defect can occur without warning during vehicle operation, thereby posing an unreasonable safety hazard to drivers, passengers, other motorists and pedestrians. Many Class Vehicle owners have reported significant, unexpected slow-downs and stops due to the false engagement of the Class Vehicle's FEB system, even though no objects – vehicles, pedestrians, or otherwise – were nearby. Class Vehicle owners have further complained that the FEB system also frequently deactivates itself, rendering this safety feature useless.

4.     The Class Vehicles are marketed as safe for use. Defendants failed to disclose the FEB Defect to consumers, despite their knowledge that the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the time of the sale and thereafter. Defendants have actively concealed the true nature and extent of the FEB Defect from Plaintiff and other Class members, and have failed to disclose it to them at the time of purchase or lease or thereafter. Had Plaintiff and Class members known about the FEB Defect, they would not have purchased and/or leased the Class Vehicles or would have paid less for them. As a result of their reliance on Defendants' omissions and/or misrepresentations, Class members have suffered an ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

5.     Despite notice of the FEB Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the FEB Defect, have not offered Class members a suitable repair or replacement free of charge, and have not offered to reimburse all Class members the costs they incurred relating to diagnosing and repairing the FEB Defect or for the value consumers paid for the FEB feature in the first place. Defendants have refused to repair or replace the Class Vehicles despite the fact that the Class Vehicles are under a comprehensive warranty, as explained in detail below. Thus, Defendants have wrongfully and intentionally transferred the cost of repair of the FEB Defect to Plaintiff and members of the Classes by fraudulently concealing the

existence of the FEB Defect.

6.      Under warranties provided to Plaintiff and members of the Classes, Defendants promised to repair or replace defective FEB components arising out of defects in materials and/or workmanship, such as the FEB Defect, at no cost to owners or lessors of the Class Vehicles.  For illustrative purposes, NNA offers a 36-month or 36,000-mile Basic Warranty that "covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan."[2]

7.      Defendants breached their express and implied warranties through which they promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including in the FEB System.  Because the FEB Defect was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the Class Vehicles pursuant to the terms of the warranty.  Instead, Nissan has wrongfully shifted the cost of repairing the FEB Defect, or replacing the vehicle, to Class members.  These costs are significant, and no reasonable consumer expects to incur such costs.

8.      Knowledge and information regarding the FEB Defect is in the exclusive and superior possession of Defendants and their network of authorized dealers.  Despite this, Defendants have failed to notify Plaintiff and Class members of the FEB Defect, who could not have reasonably discovered the defect through due diligence.  Similarly, Nissan has failed to provide Class members with any fix or remedy for the FEB Defect, despite voluminous customer complaints.

9.      Defendants misrepresented the standard, quality, or grade of the Class Vehicles and knowingly, actively, and affirmatively concealed the existence of the FEB Defect to increase profits and decrease costs by selling additional Class Vehicles and transferring the cost of the repair of the FEB Defect, or replacement of the vehicle, to Class members.

---

[2] https://owners.nissanusa.com/content/techpub/common/2016/2016-nissan-warranty-booklet.pdf (last visited November 26, 2018).

10.     Defendants knowingly omitted, concealed and suppressed material facts regarding the FEB Defect, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff and members of the Classes.  As a direct result of Defendants' wrongful conduct, Plaintiff and members of the Classes have suffered damages, including, *inter alia*: (1) out-of-pocket expenses for repair of the FEB Defect; (2) costs for future repairs or replacements; (3) sale of their vehicle at a loss; (4) diminished value of their vehicles; and/or (5) the price premium attributable to the FEB feature.

11.     Plaintiff and Class members therefore assert claims against Defendants for fraud, negligent misrepresentation, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., violation of the California Consumers Legal Remedies Act, California Civil Code § 1750, *et. seq*. ("CLRA"), violation of the Unfair Competition Law, California Business & Professions Code § 17200, and unjust enrichment. Plaintiff also asserts claims under New York General Business Law § 349 on behalf of a New York Subclass.  As alleged herein, Defendants' wrongful conduct has harmed owners and lessors of the Class Vehicles, and Plaintiff and members of the Classes are entitled to damages and injunctive and declaratory relief.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

13.     This Court also has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"). 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the states in which Defendants are citizens.

14.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(3) with

respect to NNA because NNA is subject to personal jurisdiction in this District by virtue of its status as a California corporation with a principal place of business outside of California.  Venue properly lies in this District pursuant to 28 U.S.C. § 1391(c)(3) with respect to NMC because, as a non-resident of the United States, NMC "may be sued in any judicial district."

**PARTIES**

**Plaintiff**

15.      Plaintiff Cathy Bashaw is a citizen of the State of New York and resides in Plattsburgh, New York.  In or around the Fall of 2016, Plaintiff leased a 2017 Nissan Rogue SL AWD from a Nissan-authorized dealer, Huttig Nissan of Plattsburgh, New York, for her personal or household use.

16.      Unbeknownst to Plaintiff at the time of leasing her Rogue, Plaintiff's vehicle contained the FEB Defect.  None of the advertisements reviewed or representations received by Plaintiff and members of the Classes contained any disclosure relating to the FEB Defect in the Class Vehicles.  Had Defendants disclosed the FEB Defect, Plaintiff would not have leased her vehicle on the terms that she did, or she would have paid less for her vehicle.

17.      When Plaintiff and Class members purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles were free from defects such as the FEB Defect and/or would not pose an unavoidable safety risk.  Had Defendants disclosed the FEB Defect, Plaintiff and Class members would not have purchased or leased the Class Vehicles or would have paid less for their vehicles.

18.      The Class Vehicles were operated in a reasonably foreseeable manner and as the vehicles were intended to be used.  Plaintiff and Class members have suffered an ascertainable loss as a result of Defendants' deceptive conduct, breach of warranty, common law and statutory duties, and omissions and/or misrepresentations associated with the FEB Defect, including but not limited to, out-of-pocket losses and/or the costs of future repairs or replacements, the price premium attributable to the FEB feature, and diminished performance and value of their respective vehicles.

19.     Neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiff and Class members of the FEB Defect prior to the purchase or lease of the Class Vehicles, nor at any time thereafter.

**Defendants**

20.     Defendant NNA is a California corporation with its principal place of business located at 983 Nissan Drive, Smyrna, TN 37167.  NNA does business in throughout the United States.  NNA engages in business, including the design, manufacturing, advertising, marketing, and sale of Nissan automobiles nationwide, including throughout New York and California.

21.     Defendant NMC is a Japanese corporation headquartered in Yokohama, Japan. NMC is the parent corporation of NNA.  NMC, through its various agents and subsidiaries – including NNA – designs, manufactures, markets, distributes and sells Nissan automobiles in California and multiple other locations in the United States.

22.     NNA and NMC sell Nissan vehicles through a network of dealerships that are the agents of NNA and NMC.

23.     There exists, and at all times herein existed, a unity of ownership between NMC, NNA and their agents such that any individuality or separateness between them has ceased and each of them is the alter ego of the others.  Upon information and belief, at all times mentioned herein, each Defendant was acting as an agent and/or employee of the other Defendant, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of the other Defendant.  In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, the other Defendant.

24.     Upon information and belief, Defendant NMC communicates with Defendant NNA concerning virtually all aspects of the Nissan vehicles it distributes within the United States.  At all relevant times, NNA acted as an authorized agent, representative, servant, employee and/or alter ego of NMC while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring

the performance of Nissan vehicles in the United States, including substantial activities that occurred within this jurisdiction.

25.    At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the Nissan brand name throughout the United States.  Defendants and/or their agents designed and manufactured the Class Vehicles. Defendants and/or their agents also developed and disseminated the owner's manuals and warranty booklets and information, advertisements, and other promotional materials relating to the Class Vehicles.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.    The Forward Emergency Braking ("FEB") System Defect

26.    In 2016, Nissan began offering the feature known as "Forward Emergency Braking" ("FEB") as on option on the Class Vehicles.  For example, FEB was available as a part of the $2,020 "SL Premium Package" option on the 2017 Nissan Rogue SL.[3]

27.    Starting in 2018, Nissan began offering "Automatic Emergency Braking" ("AEB") feature, formally known as Forward Emergency Braking, as part of its newly-introduced Intelligent Safety Shield ("ISS").  ISS is Nissan's "way of looking out for you and yours by monitoring, responding and protecting to help keep you and your passengers safe."  ISS is an umbrella term for several technologies meant to assist drivers and boost safety, including the FEB system.  ISS and FEB are standard on many 2018 Nissan models, including the Nissan Rogue/Rogue Sport, Nissan Altima, Nissan Murano, Nissan Leaf, Nissan Pathfinder, Nissan Maxima, and Nissan Sentra.[4]  Nissan expects to sell roughly 1,000,000 of these vehicles in 2018 alone.[5]

---

[3] https://monroneylabels.com/cars/80111-2017-nissan-rogue (last visited November 26, 2018).

[4] https://nissannews.com/en-US/nissan/usa/releases/nissan-to-offer-standard-automatic-emergency-braking-aeb-on-one-million-u-s-vehicles-in-2018-model-year?query=automatic+emergency+braking (last visited November 26, 2018).

[5] https://www.nissanusa.com/experience-nissan/news-and-events/car-safety-features-technology.html (last visited November 26, 2018).

28.     FEB "provide[s] audible and visual alerts and apply braking to help you avoid or mitigate a frontal collision with a vehicle ahead."  FEB relies on a front distance sensor in the front grille to monitor a car's proximity to the vehicle ahead, warn of possible collisions, and hit the brakes if the driver cannot.

29.     But a problem with the sensor modules in the Class Vehicles causes the FEB system to frequently deactivate itself and/or to falsely engage FEB, thereby causing the Class Vehicles to unexpectedly and abruptly slow down and/or come to a stop despite no obstacles being nearby (the "FEB Defect").  The FEB Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers because it severely impacts a driver's ability to control vehicle speed as expected under normal driving conditions and maintain an appropriate speed based on traffic flow, thereby increasing the risk of a rear-end collision.

30.     As Digital Trends detailed in September 2018:

> After Digital Trends identified the issue in the 2018 Nissan Sentra and brought it to the automaker's attention, the company acknowledged the problem, and said it was working to replace the faulty part.

> "Nissan is aware of a relatively limited population of Sentra customers who are reporting conditions similar to that which you described," Dan Bedore, Director of Communications for Nissan, told Digital Trends.  "Our engineering team has identified the cause to be a supplied-component issue…  Nissan is well into the standard process for obtaining counter-measure parts and informing our dealers of the remedy, which is expected in the coming weeks."

> A Bosch spokesman told Digital Trends that it was helping Nissan with the issue, but declined to specify which other automakers use the module, or who make the radar chips within them.

> "We hope you will appreciate that, as a matter of principle, we do not comment on actions of our customers.  We are working closely with Nissan to support it in the measures it has taken.  We hope you will understand that only the automaker is in a position to answer questions in detail," the company said.[6]

---

[6] https://www.digitaltrends.com/cars/faulty-radars-compromising-nissan-emergency-braking-system/ (last visited November 27, 2018).

**B.     Nissan's Knowledge Of The FEB Defect**

31.     Nissan became aware of the FEB Defect through sources not available to Plaintiff and members of the Classes, including, but not limited to:  pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to Nissan's network of dealers and directly to Nissan, aggregate warranty data compiled from Nissan's network of dealers, testing conducted by Nissan in response to consumer complaints, and repair order and parts data received by Nissan from Nissan's network of dealers and suppliers, including Bosch.

32.     Nissan had and continues to have a duty to fully disclose the true nature of the FEB Defect to Class Vehicle owners, among other reasons, because the FEB Defect poses an unreasonable safety hazard; because Nissan had and has exclusive knowledge or access to material facts about the Class Vehicles' FEB systems that were and are not known to or reasonably discoverable by Plaintiff and the other members of the Classes; and because Nissan has actively concealed the FEB Defect from its customers at the time of purchase or repair and thereafter.

33.     Specifically, Defendants: (a) failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the FEB Defect; (b) failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their FEB systems were not in good working order, were defective and prone to failure, and were not fit for their intended purpose; and (c) failed to disclose and/or actively concealed the fact that the Class Vehicles and their FEB systems were defective, despite the fact that Defendant learned of the FEB Defect before it placed the Class Vehicles in the stream of commerce.

34.     Nissan has been aware of problems with the FEB feature since at least 2015, given its release of a series of Technical Service Bulletins ("TSBs") to dealers related to the radar sensor used in the Class Vehicles' FEB systems starting in 2016.  "Manufacturers typically issue more TSBs in the first model year of a new or redesigned vehicle when, despite extensive pre-

production testing, they discover design, engineering and manufacturing flaws after the vehicles are exposed to the ultimate test – being driven in the real world."[7]  As detailed further below, in 2015, Class members began complaining about the FEB Defect in model year 2015 Nissan Muranos – the first Class Vehicle to offer the option.[8]  *See infra* ¶¶ 47-61.

35.     On September 6, 2016, Nissan released Technical Service Bulletin NTB15-099b concerning the radar sensor used in the Intelligent Cruise Control ("ICC") and FEB systems in the Class Vehicles.[9]  The TSB was designed to remedy two Diagnostic Trouble Codes ("DTCs") – DTC C1A16 (RADAR BLOCKED) and DTC C1A12 (LASER BEAM OFFCNTR) and applied to the following Nissan vehicles:  2016 Altimas, 2016 Maximas, 2015-2016 Muranos, 2016 Murano Hybrids, 2015-2016 Rogues, and 2016 Sentras.

36.     On November 28, 2016, Nissan released TSB NTB16-116 that noted a potential impact on FEB.[10]

37.     On August 1, 2017, Nissan issued TSB PC499 mandating a "quality assurance hold" related to the "front camera."

38.     On February 1, 2018, Nissan released TSB NTB18-008 which "applie[d] only to vehicles equipped with Automatic Emergency Braking (AEB) or Forward Emergency Braking (FEB)."

39.     On June 8, 2018, Nissan released TSB NTB18-041 concerning the "Unexpected Operation of AEB, FEB OR FCW [Forward Collision Warning]" in 2018 Rogue, Rogue Hybrid, and Rogue Sport vehicles.  The TSB stated that "The following system(s) operate unexpectedly or the customer reports unexpected operation:  AEB (Automatic Emergency Braking); FEB (Forward Emergency Braking); FCW (Forward Collision Warning).  On July 19, 2018, Nissan

---

[7] *See* https://www.chicagotribune.com/classified/automotive/chi-recall-tsb-or-customer-service-campaign-whats-the-difference-story.html (last visited November 30, 2018).
[8] *See* https://www.youtube.com/watch?v=J-qiiVMReLw (last visited November 30, 2018).
[9] https://static.nhtsa.gov/odi/tsbs/2016/SB-10091586-2280.pdf (last visited November 26, 2018).
[10] https://www.nhtsa.gov/vehicle/2016/NISSAN/ROGUE/SUV/AWD#manufacturerCommunications (last visited November 26, 2018).

released an amended TSB NTB18-041a, updated to include 2017-18 Rogue, Rogue Hybrid, and Rogue Sport vehicles.

40.    On August 17, 2018, Nissan released TSB PC637 informing dealers it was "conducting a quality action to reprogram the Laser Radar and Advanced Drive Assist System (ADAS) software the on specific MY2018 Rogue (T32) vehicles built in the Smyrna, TN manufacturing plant.  These vehicles are either currently in dealer inventory or assigned and in transit to the dealer.  The software update is designed to help improve the performance of Automatic Emergency Braking (AEB), Forward Emergency Braking (FEB), and Forward Collision Warning (FCW) systems in the affected vehicles."

41.    Nissan also has constantly tracked the National Highway Traffic Safety Administration ("NHTSA") database to track reports of defective FEB systems.  From this source, Nissan knew that the Class Vehicles were experiencing unusually high levels of false engagements causing abrupt slow-downs or stops; or deactivations.

42.    The following example complaints filed by consumers with NHTSA and posted on the Internet demonstrate that the FEB Defect is a widespread safety hazard that continues to plague the Class Vehicles.  Consumer complaints began with the 2015 Nissan Murano:

- **November 4, 2016 – Winnetka, IL – Forward Collision Avoidance**
  THE FORWARD EMERGENCY BRAKING SYSTEM WARNING LIGHT COMES ON (THIS MEANS THE SENSOR IS NOT WORKING AND THE EMERGENCY WARNING IS NOT WORKING; FURTHER YOU CANNOT USE CRUISE CONTROL WHEN THE LIGHT IS ON). THIS HAS BEEN A PROBLEM FROM THE BEGINNING OF OWNING THE CAR. THE DEALER TRIED MANY TIMES TO REPAIR THE PROBLEM, ALL UNSUCCESSFUL. NEXT THE DEALER REPLACED THE SENSOR, AND THE PROBLEM STILL EXISTS. THE WARNING LIGHT COMES ON WHEN THE VEHICLE HAS BEEN DRIVEN FOR A FEW MINUTES- 5 TO 30 MINUTES AFTER STARTING.

- **February 27, 2017 – West Hills, CA – Forward Collision Avoidance**
  TL* THE CONTACT OWNS A 2015 NISSAN MURANO. WHILE DRIVING VARIOUS SPEEDS, THE FORWARD BRAKING SYSTEM WARNING INDICATOR ILLUMINATED. THE VEHICLE WAS TAKEN TO THE DEALER FOR ROUTINE MAINTENANCE. THE CONTACT STATED TO THE TECHNICIAN THAT THE FORWARD BRAKING WARNING INDICATOR ILLUMINATED. IT WAS DIAGNOSED THAT THE WARNING INDICATOR WAS ILLUMINATED DUE TO THE VEHICLE BEING BUMPED AND THAT THE EMERGENCY BRAKING SYSTEM WAS TURNED OFF. THE ISSUE PERSISTED. THE VEHICLE WAS

TAKEN TO AN INDEPENDENT MECHANIC WHERE THE ISSUE COULD NOT BE DIAGNOSED. THE CONTACT MENTIONED THAT THE VEHICLE WAS PREVIOUSLY HIT A MONTH PRIOR. THE CONTACT ALSO STATED THAT THE FRONT DRIVER AND PASSENGER SIDEVIEW MIRRORS "CLOSE VEHICLE" WARNING SIGNALS NO LONGER ILLUMINATED WHEN OTHER VEHICLES WERE CLOSE. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURES. THE FAILURE MILEAGE WAS 12,000.

43. Complaints for the 2016 Nissan Murano are similar:

- **October 27, 2018 – Greensboro, NC – Forward Collision Avoidance**
ADAPTIVE CRUISE CONTROL AND FORWARD EMERGENCY BRAKING (FEB) SYSTEM BECOMES SPONTANEOUSLY DISABLED DURING DRIVING. THIS POSES A SERIOUS ISSUE WHEN ACTUALLY DRIVING THE CAR. THE CAR IS IN MOTION WHEN THIS HAPPENS. THE SYSTEM CAN ONLY BE RESET BY STOPPING THE CAR, TURNING OFF THE IGNITION AND THEN RE-STARTING THE ENGINE.

44. Complaints for the 2017 Nissan Murano are similar:

- **August 19, 2018 – Orland Park, IL – Forward Collision Avoidance**
MY VEHICLE HAD A WARNING LIGHT COME ON STATING "FRONT COLLISION AVOIDANCE UNAVAILABLE". IT WOULD SHUT OFF THE CRUISE CONTROL. TOOK IT INTO THE DEALER. THEY SAID THE VEHICLE OPERATED AS DESIGNED. TOOK IT BACK IN SEVERAL WEEKS LATER DEMANDING THEY FIX THE PROBLEM. TOOK A TEST DRIVE WITH THE TECHNICIAN. PROBLEM DID NOT REOCCUR. I GOT OUT. THE TECHNICIAN STARTED THE CAR TO PULL IT IN THE SHOP AND THE WARNING CAME ON. THEY TRACED THE PROBLEM TO A SENSOR. THE SENSOR IS NOT AVAILABLE AND IS ON BACKORDER. IN THE MEAN TIME THE CRUISE DOES NOT OPERATE AND THE FRONT COLLISION AVOIDANCE DOES NOT WORK (WAITING 5 WEEKS NOW). CANNOT DEPEND UPON THE COLLISION AVOIDANCE EVEN THOUGH THEY ADVERTISE IT.

45. Complaints for the 2018 Nissan Murano are similar:

**Sep 17, 2018 - Washington, DC - Forward Collision Avoidance**
TL* THE CONTACT OWNS A 2018 NISSAN MURANO. WHILE DRIVING VARIOUS SPEEDS, THE CRUISE CONTROL ENGAGED WITHOUT WARNING. THE CONTACT STATED THAT THE CRUISE CONTROL FEATURE OF THE VEHICLE WAS CONTROLLED BY A COLLISION CONTROL SYSTEM, WHICH MALFUNCTIONED WHILE ON AN INCLINE AND WHILE DRIVING VARIOUS SPEEDS ON A BRIDGE. EACH TIME THE FAILURE OCCURRED, THE VEHICLE DECELERATED WITHOUT ANY WARNING OR BRAKE LIGHTS ILLUMINATED. THE DEALER WAS NOT MADE AWARE OF THE FAILURE. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND PROVIDED THE CONTACT WITH CASE NUMBER: 32755178. THE FAILURE MILEAGE WAS APPROXIMATELY 500.

46.     Complaints for the 2016 Nissan Rogue are similar:

- **July 2, 2018 – Nashville, TN – Forward Collision Avoidance**

  FRONT COLLISION SENSOR GOES OFF AT RANDOM SPEEDS WHILE TRAVELING FORWARD WITH NO ONE ON THE ROAD AHEAD. THE VEHICLE AUTOMATICALLY APPLIES THE BRAKE IN SOME INSTANCES. THE INFOTAINMENT SYSTEM ALSO RESETS ITSELF PERIODICALLY. PRIOR SERVICE HAS HAD THE ENTIRE BODY CONTROL MODULE REPLACED, BUT ELECTRICAL ISSUES PERSIST. MULTIPLE DEALERS HAVE NOT BEEN ABLE TO RECREATE THE PROBLEM EVEN THOUGH ISSUES ARE STILL PRESENT. SIGNIFICANT SAFETY HAZARD BY VEHICLE AUTOMATICALLY APPLYING BRAKE RANDOMLY AND NISSAN STILL DOES NOTHING TO RESOLVE THE ISSUE. THESE INSTANCE HAPPEN ON MULTIPLE OCCASIONS.

47.     Complaints for the 2017 Nissan Rogue are similar:

- **Oct 09, 2018 - Villas, NJ - Forward Collision Avoidance**

  TL* THE CONTACT OWNS A 2017 NISSAN ROGUE. WHILE DRIVING APPROXIMATELY 40 MPH AND ATTEMPTING TO STOP THE VEHICLE, THE BRAKE PEDAL TRAVELED TO THE FLOORBOARD WHEN IT WAS DEPRESSED. THE VEHICLE DID NOT STOP AND REAR ENDED THE PRECEDING VEHICLE. THERE WAS NO WARNING INDICATOR ILLUMINATED. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS FILED. THE CONTACT SUSTAINED INJURIES THAT LATER REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS DAMAGED AND TOWED TO A PRIVATE PROPERTY. THE CONTACT CALLED TEAM NISSAN AT (856) 696-2277 (LOCATED AT 1715 S DELSEA DR, VINELAND, NJ 08360) AND WAS REFERRED TO THE MANUFACTURER. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND ASKED IF THE CONTACT WANTED THE VEHICLE REPAIRED. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 13,000. THE VIN WAS NOT PROVIDED.

- **Mar 01, 2018 - Del Ray Beach, FL - Crash Imminent Braking**

  TL* THE CONTACT OWNS A 2017 NISSAN ROGUE. THE CONTACT STATED THAT THE FORWARD EMERGENCY BRAKING PACKAGE FUNCTION FAILED TO PROVIDE A WARNING AND DID NOT BRAKE WITHOUT THE CONTACT APPLYING FORCE TO THE BRAKE PEDAL. THE DEALER (WEST PALM BEACH NISSAN, 3870 W BLUE HERON BLVD, RIVIERA BEACH, FL 33404, (561) 612-4825) WAS NOTIFIED AND TESTED THE VEHICLE, CONSUMER WAS LATER TOLD THAT TEST WAS UNOFFICIAL AS CORPORATE SAID TOLD THEM THEY COULDN'T TEST FEATURE. DELRAY NISSAN SAID THE SAME FEATURE IN INFINITI QX60 WORK PERFECTLY SO DOES CRUISE CONTROL BRAKING IN BOTH VEHICLES. HOWEVER WITHOUT CRUISE CONTROL ACTIVATED THE NISSAN FORWARD COLLISION SEEMS NOT WORK. THE APPROXIMATE FAILURE MILEAGE WAS 130.

- **Jan 10, 2018 - Mansfield, OH - Forward Collision Avoidance**

  THERE IS A SAFETY ISSUE WITH THE FRONT BRAKING SYSTEM. THERE IS EVEN A DOCUMENT SEND TO THE NISSAN DEALERSHIPS NOTIFYING THEM

THAT IT IS A KNOWN ISSUE, BUT THERE IS NO FIX AS OF YET THE ENGINEERS CANNOT EVEN FIND A CAUSE FOR THE ISSUE. I ASKED FOR A COPY OF THE LETTER, BUT, OF COURSE, IT IS A "CONFIDENTIAL" DOCUMENT AND ONLY PRIVILEGED PARTIES ARE ABLE TO HAVE ACCESS TO IT. WHAT HAPPENS IS THERE WILL BE AN AUDIBLE BEEPING (TWO-THREE TIMES) AND IMMEDIATELY AFTER YOUR CAR WILL SLAM ON THE BRAKES ON IT OWN, WHICH IN TURN KICKS ON THE ANTI-LOCK BRAKES. THERE WILL BE NOTHING ON THE SENSOR OR NOTHING IN YOUR PATH IN FRONT OF YOU. IT DOES THIS SPONTANEOUSLY. THIS WAS WHILE I WAS DRIVING!!!! THIS HAS HAPPENED TO ME 3 TIMES ALREADY. WHEN HOOKED UP TO A DIAGNOSTIC TESTER, IT THROWS A CODE THAT THERE WAS SOMETHING IN FRONT OF THE SENSOR. THE DATE MARKED ON THIS CLAIM/REPORT WAS THE LAST TIME IT HAS HAPPENED....SO FAR....

- **Dec 31, 2017 - Vacaville, CA - Forward Collision Avoidance**
  THIS VEHICLE WAS PURCHASED NEW FROM THE DEALERSHIP, NISSAN OF VACAVILLE, ON 9-16-2017. ON 10-26-2017 WHILE TRAVELING AT APPROXIMATELY 35 MPH THE VEHICLE'S FORWARD EMERGENCY BRAKING SYSTEM (FEB) SUDDENLY AND UNEXPECTEDLY ACTIVATED, BRING THE CAR TO A FULL AND COMPLETE STOP IN THE MIDDLE OF THE ROAD. THE BRAKING SYSTEM DISENGAGED WITHIN A FEW SECONDS AND I WAS ABLE TO PULL TO THE SIDE OF THE ROAD. THERE WERE NO ADVERSE CONDITIONS, OBSTRUCTIONS, OR VEHICLES WITHIN A DANGEROUS DISTANCE TO HAVE CAUSED THE ACTIVATION. THE DASHBOARD WARNING LIGHTS DISPLAYED THE ALERT MESSAGE "WARNING" "MALFUNCTION." THE VEHICLE WAS SUBSEQUENTLY TOWED TO AUTOCOM NISSAN OF CONCORD FOR SERVICE AND DIAGNOSIS. I WAS TOLD CODES U1002, C1B5D, AND C1A16-97 WERE STORED IN THE COMPUTER SYSTEM. C1A16-97 RELATES TO AN OBSTRUCTION OR BLOCKED RADAR SENSOR, BUT THAT ALL THE STORED CODES WERE IN THE PAST. C1A16-97 WAS STORED AT 1983 MILES - I EXPERIENCED NO ACTIVATION OF THE SYSTEM AT THAT TIME. ACCORDING TO THE DEALERSHIP THERE WERE NO STORED CODES RELATED TO TODAY'S INCIDENT. NISSAN TECH LINE MADE A REMOTE DIAGNOSIS AND CONCLUDED A LOOSE LICENSE PLATE FRAME LIKELY HAD CAUSED AND OBSTRUCTION, ACTIVATING THE SYSTEM. THIS IS IN CONFLICT WITH THE OWNERS MANUAL'S EXPLANATION OF FEB SHUT DOWN IN THE EVENT OF AN OBSTRUCTION. ON 12-19-2017 I RETURNED THE VEHICLE TO THE DEALERSHIP WHERE I PURCHASED THE CAR. AFTER FOUR DAYS OF DIAGNOSTIC AND ROAD TESTING I WAS TOLD THAT, ACCORDING TO NISSAN TECH LINE, SINCE THE DEALERSHIP WAS UNABLE TO DUPLICATE THE MALFUNCTION DURING THE TEST DRIVE, THEN THE CAR IS CONSIDERED OPERATIONAL AND SAFE AND COULD BE RETURNED TO THE CUSTOMER. AND ALTHOUGH FINDING MULTIPLE PAST CODES STORED ECM-UL00L, ASB-UL002, BCM UL000-00, UL000-01, CLB40-49, CLB30-49, UL000-00, ICC /ADAS-C1B53-04, CLB54-00, UL000-01 ALL INDICATION MALFUNCTION. NONE OF WHICH HAVE BEEN RESOLVED OR REPAIRED. ## VIN PASSED ## NISSAN ROUGE S FWD 2017.5 ##

- **Dec 22, 2017 - Roswell, GA - Forward Collision Avoidance**
  THE FIRST TIME THE VEHICLE MALFUNCTIONED, I WAS DRIVING IN A
  GROCERY STORE PARKING LOT WITH A PERSONAL FRIEND AND SUDDENLY
  THE CAR'S EMERGENCY BRAKE PROTECTION ACTIVATED JOLTING THE CAR
  TO A STOP. THE SECOND OCCURRENCE WAS IN A PARKING DECK
  (DIFFERENT FROM THE FIRST LOCATION) AND THE CAR AGAIN ACTIVATED
  THE EMERGENCY BRAKE PROTECTION SYSTEM JOLTING THE CAR TO A
  STOP. I THEN FELT THIS WAS A SAFETY ISSUE AND BROUGHT THIS INTO THE
  NISSAN DEALERSHIP. THEY CHECKED THE CAR AND CALLED REPORTING
  THEY COULD NOT FIND ANYTHING WRONG WITH THE CAR AND I SHOULD
  PICK IT UP. I PICKED THE CAR UP AND CONTINUED TO DRIVE IT UNTIL I
  SWITCHED CARS WITH A PERSONAL FRIEND WHO USED THE CAR TO DRIVE
  ONE MILE BACK TO HOME DOWN A 4 LANE ROAD. UPON COMING TO AN
  INTERSECTION, SHE REPORTS SHE BEGAN SLOWING DOWN AND GOT IN A
  TURN LANE TO MAKE A LEFT ONTO OUR NEIGHBORHOOD ROAD AND AS
  SHE WAS APPROACHING THE LIGHT, THE CAR ACTIVATED THE EMERGENCY
  BRAKING SYSTEM, AGAIN JOLTING THE CAR TO A STOP. SHE STATES
  DURING AND AFTER THE CAR CAME TO A COMPLETE STOP, SHE KEPT HER
  FOOT ON THE BREAK THE ENTIRE TIME AND WHILE DECOMPRESSING THE
  BRAKE, THE CAR THEN JOLTED FORWARD CRASHING INTO THE CAR IN
  FRONT OF HER. I HAD THE CAR TOWED IN TO THE NISSAN DEALERSHIP AND
  HAD CORPORATE NISSAN STEP IN TO INVESTIGATE THE CAR. 6 WEEKS
  LATER THEY INVESTIGATED THE CAR REPORTING THAT NO ERROR WAS
  FOUND WITH THE CAR AND AGAIN I SHOULD PICK MY VEHICLE UP. I
  REQUESTED SPECIFIC TESTS AND ASKED THE TESTING PROCESS FOR THE
  CAR AND WAS ADVISED BY THE INVESTIGATION DEPARTMENT THAT THEY
  COULD NOT DISCLOSE THAT INFORMATION AND THAT THE TESTING AND
  RESULTS WERE "PROPERTY OF NISSAN" AND THAT THEY WERE NOT
  OFFERING ANY FURTHER ASSISTANCE.

- **Sep 30, 2018 - Carnegie, PA - Forward Collision Avoidance**
  AUTO EMERGENCY BRAKING IS ACTIVATING WHEN THERE IS NO VEHICLE
  OR OBSTACLE IN FRONT OF ME. IT HAPPENEND THE FIRST TIME I LEFT THE
  DEALER ON AN OPEN HIGHWAY. IT HAPPENED AGAIN IN A DARK PARKING
  GARAGE, AND AGAIN WHEN I WAS GOING LESS THAN 10 MILES AN HOUR
  OVER RAILROAD TRACKS. IT HAPPENED TO MY HUSBAND GOING OVER A
  BRIDGE WITH METAL EXPANSION JOINTS. GOOD THING NO ONE WAS
  BEHIND US WHEN IT HAPPENED. I WILL BE CALLING THE DEALER IN THE
  MORNING. MY ROGUE HAS AROUND 3,000 MILES ON IT.

48.     Complaints concerning the 2018 Nissan Rogue are similar:

- **Sep 24, 2018 - Medford, NY - Dynamic Brake Support/Brake Assist**
  TL* THE CONTACT OWNS A 2018 NISSAN ROGUE. THE CONTACT STATED
  THAT THE VEHICLE'S AUTOMATIC BRAKING FEATURE INDEPENDENTLY
  ACTIVATED WHILE THE VEHICLE WAS BEING DRIVEN AT VARIOUS SPEEDS.
  THERE WERE NO OBSTACLES IN THE VEHICLE'S PATH. THE FAILURE
  OCCURRED WITHOUT WARNING ON APPROXIMATELY SIX OCCASIONS. THE

DEALER AND MANUFACTURER WERE NOT NOTIFIED OF THE FAILURE. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE FAILURE MILEAGE WAS APPROXIMATELY 1,600.

- **Sep 17, 2018 - Lubbock, TX - Forward Collision Avoidance**
  MY 2018 NISSAN ROGUE BRAKED SUDDENLY, FOR NO REASON. TRAVELING 30 MPH ON A QUIET NEIGHBORHOOD STREET. THE LIGHTS ON THE DASHBOARD FLASHED BRIEFLY, THERE WAS A LOUD GRINDING NOISE, THEN SUDDEN AND COMPLETE STOP IN THE MIDDLE OF THE ROAD. NO CARS IN FRONT OR BACK OF MINE. THE ONLY THING IN THE ROAD WAS A METAL DRAIN COVER. VERY FRIGHTENING EXPERIENCE.

- **Jul 24, 2018 - The Villages, FL - Forward Collision Avoidance**
  WE PURCHASED 2018 NISSAN ROGUE IN JUNE. TODAY WE DROVE 75 MILES AND THE EMERGENCY BRAKING ACTIVATED 4 TIMES FOR NO REASON. ONCE ON THE INTERSTATE, ONCE ON THE OFF RAMP, AND TWICE ON THE HIGHWAY. THERE WERE NO RR TRACKS OR OTHER OBSTACLES. THIS HAS HAPPEN TO ME ON TWO OTHER OCCASIONS. THE VEHICLE HAS ALMOST 1000 MILES ON IT. I+M AFRAID SOMEONE WILL THINK I+M BRAKE CHECKING THEM! ILL BE SPEAKING TO THE DEALER, BUT I SAW OTHER COMPLAINTS HERE AND DECIDED TO REGISTER MINE ALSO. WHEN THIS HAPPENS IT SOUNDS AS IF YOU+RE DRIVING OVER +RUMBLE STRIPS+.

- **Jul 12, 2018 - Pittsburgh, PA - Forward Collision Avoidance**
  TWO WEEK OLD NISSAN ROGUE. THE EMERGENCY BRAKING SYSTEM ACTIVATES IN THE PARKING GARAGE WHERE I WORK. IT SEEMS TO HAPPEN ANYWHERE IN THE GARAGE (ANY FLOOR) AND WHEN I SURPASS ~15MPH. SPOKE WITH THE DEALER AND THEY ARE GOING TO TAKE A LOOK AT IT, BUT GOING BY THE NUMBER OF SIMILAR COMPLAINTS ON THIS SITE I'M BEGINNING TO THINK NISSAN NEEDS TO ISSUE A FIX AND RECALL.

49.     Complaints concerning the 2017 Nissan Maxima are similar:

- **Jul 11, 2018 - Magnolia, NJ - Forward Collision Avoidance**
  THE PROBLEM BEGAN IN MY 2017 NISSAN MAXIMA. I TOLD THE DEALERSHIP THAT THE EMERGENCY AUTOMATIC BRAKING SYSTEM INITIATED WHILE NO OTHER CARS WERE AROUND. THEY TRADED ME IN TO THE 2018 NISSAN ROGUE AND THE SAME ISSUE HAS OCCURRED 3 TIMES IN THIS VEHICLE. EACH TIME, THERE WERE NO OTHER VEHICLES AROUND. THE DEALERSHIP CLAIMED THERE IS NOTHING WRONG WITH THE VEHICLE. IT WASN'T UNTIL I CONTACTED CORPORATE THAT THEY ADMITTED THEY KNOW THERE'S A DEFECT, BUT NO FIX WAS AVAILABLE YET. THEY KNOWINGLY JEOPARDIZED MY INFANT SON'S SAFETY AND LIED TO ME. THIS DEFECT IS SCARY AND SHOULDN'T BE ALLOWED TO BE SWEPT UNDER THE RUG BY THE DEALERSHIPS. I NO LONGER FEEL SAFE DRIVING WITH NISSAN.

- **Jun 23, 2018 – Fort Lauderdale, FL - Forward Collision Avoidance**
  APPLIED BRAKES IN EMERGENCY SITUATION. ABS SYSTEM FAILED TO

OPERATE AND ALL FOUR WHEELS LOCKED AND CAR SLID INTO OTHER VEHICLE. ALSO CAR EQUIPPED WITH BRAKE ASSIST IT TO FAILED TO OPERATE.

50.     Consumers have logged similar complaints regarding the 2016 Nissan Altima:

- **October 1, 2016 – Dallas, TX – Forward Collision Avoidance**
TL* THE CONTACT OWNS A 2016 NISSAN ALTIMA. WHILE DRIVING VARIOUS SPEEDS, THE FORWARD EMERGENCY BRAKING WARNING INDICATOR ILLUMINATED AND CAUSED THE VEHICLE TO SLOW DOWN AND THEN STOP. THE CONTACT TOOK THE VEHICLE TO A DEALER, BUT THERE WAS NO RESOLUTION FOR THE ISSUE WITH THE EMERGENCY BRAKE. THE MANUFACTURER WAS NOTIFIED OF THE ISSUE. THE FAILURE MILEAGE WAS 7,259.

51.     Consumers have logged similar complaints regarding the 2017 Nissan Altima:

- **March 13, 2017 – Manchester, TN – Forward Collision Avoidance**
EMERGENCY FORWARD BRAKING DOES NOT DO ANYTHING THAT THE NISSAN BOOK OUTLINES OR THE ON LINE VIDEO OUTLINES. I HAVE TWO CASE NUMBERS 25746321 AND25772524 AND TWO DEALERSHIPS THE WORK REPORT SAYS NO CODE NO PROBLEM.

52.     Consumers have logged similar complaints regarding the 2018 Nissan Altima:

- **November 30, 2018 – Louisville, KY – Electrical System**
I PURCHASED A NEW 2018 NISSAN, THE FRONT END COLLISION SENSOR IS ALARMING AND HAS EVER SINCE THE CAR WAS NEW. I HAVE TAKEN IT TO TWO DIFFERENT DEALERS AND THEY HAVE REFERRED ME TO NISSAN AND SAY THAT I SHOULD WAIT FOR THE RECALL. I THINK THIS IS UNACCEPTABLE AS MY CAR IS NOT SAFE WITH THE FRONT END COLLISION NOT WORKING PROPERLY. PLEASE HELP ME FIX THIS PROBLEM. AS I AM DRIVING DOWN THE ROAD, THE SENSOR ALARMS AND SAYS IT IS NOT WORKING WHEN THERE IS NOTHING IN FRONT OF MY VEHICLE. I HAD ONE DEALER TELL ME IT WAS PICKING UP THE SUN......PLEASE HELP.

53.     Consumers have logged similar complaints regarding the Nissan Leaf:

- **Jun 25, 2018 - Phoenix, AZ - Forward Collision Avoidance**
WHILE DRIVING FORWARD, THE VEHICLE SUDDENLY, UNEXPECTEDLY AND VIOLENTLY APPLIES THE BRAKES WITHOUT ANY DRIVER INPUT WHATSOEVER! THERE ARE NO OTHER VEHICLES OR PEDESTRIANS IN THE VICINITY AT THE TIME. THIS SUDDEN BRAKING PROBLEM BEGAN ON OR ABOUT 5/15/18 AND HAPPENED ON SEVERAL OCCASIONS AFTER THAT. TWICE WHILE ENTERING THE UNDERGROUND PARKING GARAGE AT AN OFFICE BUILDING AND TWICE WHILE DRIVING ON A CITY STREET. VEHICLE HAS BEEN AT THE LOCAL NISSAN DEALER FOR OVER A WEEK BUT NEITHER THE DEALERSHIP NOR THE MANUFACTURER APPARENTLY HAS ANY IDEA HOW TO FIX THE PROBLEM. THEY THINK THAT THERE IS A FAULT IN THE AUTOMATIC EMERGENCY BRAKING SYSTEM. THE SERVICE MANAGER TOLD ME THAT OTHER INSTANCES OF THE SAME ISSUE HAVE BEEN REPORTED TO NISSAN. THE SALESPERSON INDICATED THAT THERE WERE 4 OTHER

SIMILAR CASES AT THEIR DEALERSHIP ALONE. THEY ALSO WILL NOT LET US TAKE THE VEHICLE HOME WITHOUT SIGNING A RELEASE OF LIABILITY DOCUMENT. THE OBVIOUS CONCERN IS THAT THE EMERGENCY BRAKING SYSTEM WILL AGAIN RANDOMLY ACTIVATE WHILE TRAVELING AT A HIGHER SPEED AND CAUSE AN ACCIDENT RESULTING IN SERIOUS PROPERTY DAMAGE AND INJURIES!

54.     Consumers have logged similar complaints regarding the 2018 Nissan Sentra:

- **Jul 31, 2018 - Cedar Park, TX - Forward Collision Avoidance**
  THE FRONT SENSOR KEEP SHOWING THE "FRONT SENSOR UNAVAILABLE" FOLLOWED BY THE CRASH ICON AT ALL TIMES OF THE DAY, AND ALL SPEEDS INCLUDING IN THE STOPPED POSITION. THE SENSOR GOES OUT REGARDLESS OF WHETHER OR NOT THERE ARE OTHER VEHICLES NEAR THE CAR.

55.     Consumers have logged similar complaints regarding the 2017 Nissan Pathfinder:

- **September 21, 2018 – Sarasota, FL – Forward Collision Avoidance**
  MY EMERGENCY BRAKING KEEPS SENDING ME ALERTS WHEN THERE IS NOTHING IN FRONT OF ME. I'M GETTING MESSAGES THAT THE SYSTEM IS DISABLE BECAUSE OF AN OBSTRUCTION. THIS HAPPENS A LOT OF TIMES WHEN IT'S RAINING OUT. I HAVE OPEN A COMPLAINT WITH NISSAN CASE NUMBER 32896677. THE DEALER TELLS ME RAIN CAN EFFECT THE SYSTEM. WHEN THE WEATHER IS BAD IS WHEN YOU NEED THE SYSTEM THE MOST.

56.     Consumers have logged similar complaints regarding the 2018 Nissan Pathfinder:

- **July 25, 2018 – Fort Meade, FL – Vehicle Speed Control**
  THE INTELLIGENT CRUSE CONTROL SYSTEM WORK INTERMINTENTLY. WHEN THIS HAPPENS THE SAFETY BRAKING SYSTEM DOES NOT WORK.

57.     The above complaints represent only a sampling of otherwise voluminous complaints regarding the FEB Defect that members of the Classes have reported to Nissan directly and through its dealers.

58.     Nissan also made partial representations while suppressing a material fact. Specifically, the owner's manuals of many of the Class Vehicles said, "[t]he FEB system can assist the driver when there is a risk of a forward collision with the vehicle ahead in the traveling lane," and that "[t]he FEB system uses a radar sensor … located behind the front bumper to measure the distance to the vehicle ahead in the same lane."  Although the manual discloses that the "FEB system does not function in all driving, traffic, weather and road conditions," the manual does not disclose that the FEB system has a defect that can cause sudden deceleration or stops even if there is not another vehicle ahead in the traffic lane.  Nor does the manual disclose

that the defect can cause the FEB system to deactivate regardless of "driving, traffic, weather and road conditions." The owner's manuals of other Class Vehicles said the same thing, except that it used the term "AEB system" instead of the "FEB system."

59. Although Nissan was aware of the widespread nature of the FEB Defect in the Class Vehicles, and that it posed grave safety risks, Nissan has failed to take adequate steps to notify all Class Vehicle owners of the FEB Defect and provide relief.

60. Defendants have not recalled the Class Vehicles to repair the FEB Defect, have not initiated a customer service campaign to address the FEB Defect, have not offered Class members a suitable repair or replacement of parts related to the FEB Defect free of charge, and have not reimbursed all Class members who incurred costs for repairs related to the FEB Defect.

61. Plaintiff and Class members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

62. Defendants have deprived Plaintiff and Class members of the benefit of their bargain, exposed them all to a dangerous safety defect without any notice, and failed to repair or otherwise remedy the FEB Defect contained in the Class Vehicles. As a result of the FEB Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles. Reasonable consumers, like Plaintiff, expect and assume that a vehicle's FEB system and the related components are not defective and will not malfunction while operating the vehicle as it is intended to be operated and thus did not receive the benefit of their bargain, i.e., the price premium they paid attributable to the FEB system.

63. Plaintiff and Class members further expect and assume that Nissan will not sell or lease vehicles with known safety defects, such as the FEB Defect, and will fully disclose any such defect to consumers prior to purchase, or offer a suitable, non-defective, repair.

## CLASS ALLEGATIONS

64. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class and Subclasses:

All persons or entities in the United States that purchased, lease, leased, own or owned a 2015-present Nissan vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "Nationwide Class" or "Class"); and

All persons or entities in New York that purchased, lease, leased, own or owned a 2015-present Nissan vehicle equipped with Automatic Emergency Braking or Forward Emergency Braking (the "New York Subclass") (collectively, the "Classes").

65.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by amendment or amended complaint, or narrowed at class certification.

66.     Specifically excluded from the Classes are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

67.     **Numerosity.**  The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of individuals that are members of the proposed Classes.  Although the precise number of proposed members is unknown to Plaintiff, the true number of members of each of the Classes is known by Defendants.  More specifically, Nissan and its network of authorized dealers maintains databases that contain the following information: (i) the name of each Class member that leased or purchased a vehicle; and (ii) the address of each Class member.  Thus, members of the proposed Classes may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

68.     **Typicality.**  The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all members of the Classes, paid for a Class

Vehicle designed, manufactured, and distributed by Defendants which is afflicted by the FEB Defect. The representative Plaintiff, like all members of the Classes, has been damaged by Defendants' misconduct in that she has incurred or will incur the cost of repairing or replacing his malfunctioning FEB system and related parts as a result of the FEB Defect. Further, the factual bases of Defendants' misconduct are common to all members of the Classes and represent a common thread of fraudulent, deliberate, and/or grossly negligent misconduct resulting in injury to all members of the Classes.

69. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to, the following:

(a) Whether the Class Vehicles suffer from the FEB Defect;

(b) Whether the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

(c) Whether the FEB Defect constitutes an unreasonable safety hazard;

(d) Whether Defendants knew or should have known about the FEB Defect and, if so, how long Defendants have known of the FEB Defect;

(e) Whether Defendants had a duty to disclose that the Class Vehicles suffer from the FEB Defect;

(f) Whether Defendants breached their duty to disclose that the Class Vehicles suffer from the FEB Defect;

(g) Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Class Vehicles suffered from the FEB Defect;

(h) Whether Defendants negligently and falsely misrepresented or omitted material facts including the fact that the Class Vehicles suffered from the FEB Defect;

(i) Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the FEB Defect;

(j) Whether members of the Classes would have paid less for the Class Vehicles if Defendants, at the time of purchase or lease, disclosed that the vehicles suffered from the FEB Defect;

(k)     Whether Defendants are liable to Plaintiff and the Classes for breaching their express and/or implied warranties;

(l)     Whether Defendants are liable to Plaintiff and the Classes for violation of The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* and/or any other statutory duties under state laws;

(m)    Whether Defendants violated the California Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* and the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

(n)     Whether Defendants violated the New York General Business Law § 349;

(o)     Whether Defendants have been unjustly enrichment; and

(p)     Whether Plaintiff and the Classes are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief.

70.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Classes.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

71.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by members of the Classes is relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive

supervision by a single court, and presents no unusual management difficulties under the circumstances.

72.     In the alternative, the Class may also be certified because:

(a)     the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class and Subclasses as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### Fraud

73.     Plaintiff incorporates and realleges each of the preceding paragraphs as though fully set forth herein.

74.     Plaintiff brings this count on behalf of herself and the members of the Class and Subclass.

75.     Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed, and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the FEB system in the Class Vehicles is defective, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff and members of the Classes rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

76.     As a result of Defendants' failure to disclose to members of the Classes the material fact that the FEB system in the Class Vehicles is defective, owners and lessors of the Class

Vehicles are required to spend thousands of dollars to repair or replace the FEB Defect or sell their vehicles at a substantial loss.  The fact that the FEB system in the Class Vehicles is defective is material because no reasonable consumer expects that she or he will have to spend thousands of dollars for diagnosis, repair or replacement of the FEB Defect, and because Plaintiff and members of the Classes had a reasonable expectation that the vehicles would not suffer from the FEB Defect.

77.     The fact that the FEB system installed in the Class Vehicles is defective is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  Because of the FEB Defect, the Class Vehicles may suddenly brake automatically while driving in traffic.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions and other accidents caused by the FEB Defect, and the general public is also at risk for being involved in an accident with a Class Vehicle.  Plaintiff and members of the Classes would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the FEB Defect, or would have paid less for the Class Vehicles.

78.     Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the FEB Defect would sell more Class Vehicles.

79.     Despite notice of the FEB Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the Defect, have not offered its customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class members the costs they incurred relating to diagnosing and repairing the FEB Defect or for the premium price that they paid for the FEB feature.

80.     At minimum, Defendants knew about the FEB Defect by way of customer complaints filed with affiliated dealerships and through the NHTSA, as extensively documented

above.  As such, Defendants acted with malice, oppression and fraud.  Plaintiff and members of the Classes reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions.  As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the FEB Defect, Plaintiff and members of the Classes have suffered actual damages in an amount to be determined at trial.

## COUNT II
### Negligent Misrepresentation

81.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

82.     Plaintiff brings this count on behalf of herself and the members of the Class and Subclass.

83.     Defendants owed a duty to disclose the FEB Defect and its corresponding safety risk to Plaintiff and members of the Classes because Defendants possessed superior and exclusive knowledge regarding the defect and the risks associated therewith.

84.     Despite notice of the FEB Defect from, among other things, pre-production testing, numerous consumer complaints, warranty data, and dealership repair orders, Defendants have not recalled the Class Vehicles to repair the Defect, have not offered its customers a suitable repair or replacement free of charge, and have not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the FEB Defect or for the price premium attributable to the FEB system.

85.     At minimum, Defendants knew about the FEB Defect by way of customer complaints filed with affiliated dealerships and through the NHTSA, as extensively documented above.  Nissan also issued a TSB to dealers regarding this issue on or around November 2016. Despite repeated complaints from customers, Nissan has failed to issue a recall with regard to the FEB Defect or offer its customers any meaningful relief.

86.     Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles.

87.     Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the FEB system installed in the Class Vehicles is defective, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, members of the Classes have suffered actual damages.

88.     As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules or elsewhere, to members of the Classes the material fact that the FEB system in the Class Vehicles is defective, owners and lessors of the Class Vehicles are required to spend thousands of dollars to repair or replace the Class Vehicles, or sell their vehicles at a substantial loss.  The fact that the Class Vehicles suffer from the FEB Defect is material because no reasonable consumer expects that she or she will have to spend thousands on a purported safety feature – like the FEB system – that is actually a safety hazard.

89.     The fact that the FEB system installed in the Class Vehicles is defective is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  Because of the FEB Defect, Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the false engagement or disengagement of the FEB system.  The general public is also at risk for being involved in an accident with a Class Vehicle that is unable to accelerate to or maintain an appropriate speed.  Plaintiff and members of the Classes would not have purchased the Class Vehicles but for Defendants' negligent false representations and omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the FEB Defect, or would have paid less for the Class Vehicles.

90.     Plaintiff and members of the Classes justifiably relied upon Defendants' negligent false representations and omissions of material facts. As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the FEB Defect, Plaintiff and members of

the Nationwide Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT III**
**Breach Of Express Warranty**

91.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

92.     Plaintiff brings this count on behalf of herself and the Nationwide Class and Subclass.

93.     Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles. Such representations formed the basis of the bargain in Plaintiff's and Class members' decisions to purchase or lease the Class Vehicles.

94.     Defendants are and were at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

95.     With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

96.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

97.     In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For illustrative purposes, NNA offers a 36-month or 36,000-mile Basic Warranty that "covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan." Under warranties provided to Plaintiff and members of the Classes, Defendants promised to repair or replace defective FEB components arising out of defects in materials and/or workmanship, such as the FEB Defect, at no cost to owners or lessors of the Class Vehicles.

98.     Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Classes purchased or leased their Class Vehicles.

99.     Despite the existence of the warranties, Defendants failed to inform Plaintiff and members of the Classes that the Class Vehicles contained the FEB Defect, and, thus, wrongfully transferred the costs of repair or replacement of the FEB Defect to Plaintiff and members of the Classes.

100.    Defendants have failed to provide Plaintiff or members of the Classes with a meaningful remedy for the FEB Defect, in clear breach of the express warranty described above, promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts they supplied.

101.    As described at length above, Defendants were on notice of the FEB Defect, and as such have been afforded a reasonable opportunity to cure their breach of written warranties.  Any additional time to do so would be unnecessary and futile because Defendants have known of and concealed the FEB Defect and, on information and belief, have refused to repair or replace the FEB Defect free of charge despite the FEB Defect's existence at the time of sale or lease of the Class Vehicles.

102.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and the members of the Classes have been damaged in an amount to be determined at trial.

103.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and the members of the Classes assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Classes of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

104.    On November 26, 2018, prior to filing this action, Defendants were served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel sent Defendants a letter advising them that they breached an express warranty and demanded that they cease and desist from such breaches and make full restitution by refunding the monies received therefrom.

## COUNT IV
### Breach Of Implied Warranty

105.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

106.    Plaintiff brings this count on behalf of herself and members of the Classes.

107.    Plaintiff and members of the Classes purchased or leased the Class Vehicles from Defendants by and through their authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

108.    Defendants are and were at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

109.    With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

110.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

111.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

112.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain the FEB Defect and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

113.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

## COUNT V
### Violation Of The Magnuson-Moss Warranty Act ("MMWA")

114.    Plaintiff incorporates and realleges each preceding paragraph as though fully set

forth herein.

115.   Plaintiff brings this count on behalf of herself and the members of the Classes.

116.   Plaintiff satisfies the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

117.   Plaintiff and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

118.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

119.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

120.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

121.   Defendants provided Plaintiff and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, NNA offers a 36-month or 36,000-mile Basic Warranty that "covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan."

122.   Under warranties provided to members of the Classes, Defendants promised to repair or replace defective FEB components arising out of defects in materials and/or workmanship, such as the FEB Defect, at no cost to owners or lessors of the Class Vehicles. However, Defendants have failed to provide owners with a remedy to the FEB Defect.

123.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

124.   Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the FEB Defect.  Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship.  Through their issuance of TSBs to their authorized

dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the FEB Defect.

125.    Plaintiff and members of the Classes have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Classes, on the other hand. Nonetheless, privity is not required here because Plaintiff and each member of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessors of the Class Vehicles only.

126.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the FEB Defect, but failed to remediate the same.  Likewise, Defendants failed to disclose the FEB Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

127.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

128.    Plaintiff, individually and on behalf of members of the Classes, seeks all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT VI
## Unjust Enrichment

129.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

130.    Plaintiff brings this count on behalf of herself and the members of the Classes.

131.    Plaintiff and members of the Classes conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the FEB Defect.

132.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the FEB Defect in the Class Vehicles.

133.    As a proximate result of Defendants' false representations, omissions and concealment of the FEB Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff and members of the Classes. It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff and members of the Classes.

134.    Plaintiff and members of the Classes are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

135.    Plaintiff and members of the Classes seek an order requiring Defendants' to disgorge their gains and profits to Plaintiff and members of the Classes, together with interest, in a manner to be determined by the Court.

## COUNT VII
## Violation Of California's Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.* ("CLRA") (Injunctive Relief Only)

136.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

137.    Plaintiff brings this claim on behalf of herself and members of the Class against Defendants.

138.    NNA is a "person" as defined by California Civil Code § 1761(c).  NMC is a "person" as defined by California Civil Code § 1761(c).

139.    Plaintiff and the other Class Members are "consumers" within the meaning of California Civil Code § 1761(d).

140.    By failing to disclose and concealing the defective nature of the Class Vehicles' FEBs from Plaintiff and members of the Class, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.  *See* Cal. Civ. Code §§ 1770(a)(5), (7) & (9).

141.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

142.    Defendants knew that the Class Vehicles' FEB systems suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

143.    Defendants were under a duty to Plaintiff and members of the Class to disclose the defective nature of the Class Vehicles' FEB systems and/or the associated repair costs because: a) Defendants were in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' FEBs; b) Plaintiff and members of the Class could not reasonably have been expected to learn or discover that their FEBs have a dangerous safety defect until after they purchased the Class Vehicles; and c) Defendants knew that Plaintiff and members of the Class could not reasonably have been expected to learn about or discover the FEB Defect.

144.    By failing to disclose the FEB Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

145.    The facts concealed or not disclosed by Defendants to Plaintiff and members of the Class are material because a reasonable consumer would have considered them to be important in

deciding whether or not to purchase the Class Vehicles, or to pay less for them.  Had Plaintiff and members of the Class known that the Class Vehicles' FEBs were defective, they would not have purchased the Class Vehicles or would have paid less for them.

146.    Plaintiff and members of the Class are reasonable consumers who do not expect that their vehicles will suffer from a FEB Defect.  That is the reasonable and objective consumer expectation for vehicles and their FEB systems.

147.    As a result of Defendants' misconduct, Plaintiff and members of the Class have been harmed and have suffered actual damages in that the Class Vehicles and their FEB systems are defective and require repairs or replacement.

148.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and members of the Class have suffered and will continue to suffer actual damages.

149.    By a letter dated November 26, 2018, and sent via certified mail, Plaintiff provided Defendants with notice of its alleged violations of the CLRA pursuant to California Civil Code Section 1782(a) and demanded that Defendants rectify the problems associated with the behavior detailed above.  As of the filing of this Complaint, Defendants have failed to respond to Plaintiff's demands and have failed to give notice to all affected consumers, as required by California Civil Code Section 1782.

150.    A declaration establishing venue is attached hereto.

151.    Wherefore, Plaintiff seeks injunctive relief only for this violation of the CLRA.  If Defendant's fail to respond to Plaintiff's CLRA notice within 30 days, Plaintiff may amend her Complaint to seek all available damages under the CLRA for all violations complained of herein, including, but not limited to, statutory damages, punitive damages, attorneys' fees and cost and any other relief that the Court deems proper.

152.    Accordingly, Plaintiff and members of the Class seek an order enjoining the acts and practices described above.

**COUNT VIII**
**Violation Of California's Unfair Competition Law ("UCL")**

153.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

154.    Plaintiff brings this cause of action on behalf of herself and members of the Class against Defendants.

155.    California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

156.    Defendants knew that the Class Vehicles' FEB systems suffered from an inherent defect, were defectively designed and/or manufactured, would fail prematurely, and were not suitable for their intended use.

157.    In failing to disclose the FEB Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so, thereby engaging in a fraudulent business act or practice within the meaning of the UCL.

158.    Defendants were under a duty to Plaintiff and members of the Class to disclose the defective nature of the Class Vehicles' FEB systems because: a) Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' FEB systems; b) Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles' FEB systems; and c) Defendants actively concealed the defective nature of the Class Vehicles' FEB systems from Plaintiff and Class Members at the time of sale and thereafter.

159.    The facts concealed or not disclosed by Defendants to Plaintiff and members of the Class are material because a reasonable person would have considered them to be important in deciding whether or not to purchase or lease Defendants' Class Vehicles, or to pay less for them. Had Plaintiff and members of the Class known that the Class Vehicles suffered from the FEB Defect described herein, they would not have purchased or leased the Class Vehicles or would have paid less for them.

160.    Defendants continued to conceal the defective nature of the Class Vehicles and their FEB systems even after Plaintiff and members of the Class began to report problems.  Indeed, Defendants continue to cover up and conceal the true nature of this systematic problem today.

161.    Defendants' omissions of material facts, as set forth herein, also constitute "unfair" business acts and practices within the meaning of the UCL, in that Defendants' conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.  Plaintiff also asserts a violation of public policy arising from Defendants' withholding of material safety facts from consumers.  Defendants' violation of consumer protection and unfair competition laws resulted in harm to consumers.

162.    Defendants' omissions of material facts, as set forth herein, also constitute unlawful business acts or practices because they violate consumer protection laws, warranty laws and the common law as set forth herein.

163.    Thus, by their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

164.    Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, and were capable of deceiving a substantial portion of the purchasing public.

165.    As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff and members of the Class have suffered and will continue to suffer actual damages.

166.    Defendants have been unjustly enriched and should be required to make restitution to Plaintiff and members of the Class pursuant to sections 17203 and 17204 of the Business & Professions Code.

## COUNT IX
### Deceptive Acts or Practices, New York GBL § 349

167.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

168.    Plaintiff brings this claim individually and on behalf of the members of the New York Subclass against Defendants.

169.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making misrepresentations concerning the FEB Defect.

170.    The foregoing deceptive acts and practices were directed at consumers.

171.    The foregoing deceptive acts and practices are misleading in a material way because, in the course of Defendants' business, they willfully failed to disclose and actively concealed the FEB Defect as described above.  Further, Defendants misrepresented the true nature of the Class Vehicles.  Accordingly, Defendants made untrue, deceptive or misleading representations of material facts and omitted and/or concealed material facts.

172.    Defendants engaged in deceptive acts or practices when it failed to disclose material information concerning the Class Vehicles which was known to Defendants at the time of the sale.  Defendants deliberately withheld the information about the FEB defect in order to postpone or prevent its warranty obligations and to induce the consumer to enter into a transaction.

173.    The reliability of the Class Vehicles, and the FEB systems, were material to Plaintiff and the Class.  Had Plaintiff and the Class known that their Class Vehicles had the FEB Defect, they would not have purchased the Class Vehicles, or would have done so on materially different terms.

174.    Because Defendants' deception takes place in the context of automobile safety, that deception affects the public interest.

175.    Defendants' unlawful conduct constitutes unfair acts or practices that have the capacity to and that do deceive consumers and have a broad impact on consumers at large.

176.    Plaintiff and the Class suffered injury caused by Defendants' failure to disclose material information.  Plaintiff and the Class overpaid for their vehicles and did not receive the benefit of their bargain.  The defective Class Vehicles do not operate reliably and pose a grave safety threat.  The value of the Class Vehicles has diminished now that the FEB system defect has to light, and Plaintiff and the Class own vehicles that are not safe.  Further, Plaintiff and Class members did not receive the benefit of their bargain in that they paid a price premium for a safety feature that was in reality a safety hazard.

177.    On behalf of herself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and members of the Class and New York Subclass as follows:

A.    For an order certifying the Nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class and Subclass representative; and naming Plaintiff's attorneys as Class Counsel representing the Class and Subclass members;

B.    For an order finding in favor of Plaintiff, the Nationwide Class, and the New York Subclass on all counts asserted herein;

C.    For an order awarding statutory, compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

D.    For injunctive relief enjoining the illegal acts detailed herein;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For an order awarding Plaintiff her reasonable attorneys' fees and expenses and costs of suit.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 30, 2018                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____/s/ Joel D. Smith_____
              Joel D. Smith

L. Timothy Fisher (State Bar No. 191626)
Joel D. Smith (State Bar No. 244902)
Frederick J. Klorczyk III (State Bar No. 320783)
1990 North California Blvd., Suite 940

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com
           jsmith@bursor.com
           fklorczyk@bursor.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Joel D. Smith, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Cathy Bashaw in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) because Defendant Nissan North America, Inc. is subject to personal jurisdiction in this District by virtue of its status as a California corporation with a principal place of business outside California.  Venue properly lies in this District pursuant to 28 U.S.C. 1391(c)(3) with respect to Nissan Motor Co., Ltd. because, as a non-resident of the United States, Nissan Motor Co., Ltd. "may be sued in any judicial district."

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on November 30, 2018 at San Francisco, California.


_____
                    Joel D. Smith