1  PAUL J. RIEHLE (SBN 115199)
   Paul.Riehle@dbr.com
2  MATTHEW J. ADLER (SBN 273147)
   Matthew.Adler@dbr.com
3  DRINKER BIDDLE & REATH LLP
   Four Embarcadero Center, 27th Floor
4  San Francisco, California 94111-4180
   Telephone:    (415) 591-7500
5  Facsimile:    (415) 591-7510

6  E. PAUL CAULEY, JR. (*pro hac vice*)
   Paul.Cauley@dbr.com
7  DRINKER BIDDLE & REATH LLP
   1717 Main Street., Suite 5400
8  Dallas, TX 75201-7367
   Telephone:    (469) 357-2500
9  Facsimile:    (469) 327-0860

10 Attorneys for Defendants
   NISSAN NORTH AMERICA, INC. and
11 NISSAN MOTOR CO., LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| In re Nissan North America, Inc. Litigation | Case No. 4:18-cv-07292-HSG |
|---|---|
| | **DEFENDANT NISSAN MOTOR CO., LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO RULES 12(b)(6), 9(b) AND 8(a); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date:       October 24, 2019<br>Time:       2:00 p.m.<br>Courtroom:  2, 4th Floor<br>Judge:      Hon. Haywood S. Gilliam, Jr. |
| | Complaint Filed: November 30, 2018 |

## **NOTICE OF MOTION AND MOTION TO DISMISS**

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 24, 2019 at 2:00 p.m., or as soon thereafter as this matter may be heard by the Honorable Haywood S. Gilliam, Jr., in Courtroom 2, 4th Floor of the above-entitled court located at 1301 Clay Street, Oakland, CA 94612, Defendant Nissan Motor Co., Ltd. ("NML"), by and through its counsel of record, will and hereby does move this Court pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6) for an order dismissing, as to NML, all claims in Plaintiffs' Consolidated Class Action Complaint ("CCAC") (Dkt. 38) on the ground that Plaintiffs have failed to state a claim upon which relief can be granted. Specifically, Plaintiffs have failed to provide a short and plain statement of their claims against NML as required by Rule 8(a), or state with particularity the circumstances constituting fraud as required by Rule 9(b), as the CCAC lumps together allegations against NML and Defendant Nissan North America, Inc. ("NNA") and fails to distinguish between the respective actions of each Defendant.

NML also will and hereby does move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for breach of express warranty (Count 2), breach of implied warranty (Count 3), and for failure to state the related claim under the Magnuson-Moss Warranty Act (Count 4), as the warranty referred to in the CCAC was issued by NNA. NML further moves to dismiss pursuant to Rules 9(b) and 12(b)(6) for failure to state a claim for fraudulent omission (Count 1), unjust enrichment (Count 5), and for failure to state the remaining fraud-based claims (violation of California's Consumers Legal Remedies Act (Count 6), violation of California's Unfair Competition Law (Count 7), violation of Florida's Deceptive and Unfair Trade Practices Act (Johnson and Perry only) (Count 8), violation of the Massachusetts Consumer Protection Act (Turner only) (Count 9), violation of the Missouri Merchandising Practices Act (Scott and Jane Reeves only) (Count 10), violation of the New York General Business Law § 349 (Hendrickson and Housell only) (Count 11), and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Olkowski only) (Count 12)), on the ground that each of these claims requires a transaction, and Plaintiffs have not plausibly alleged that NML was involved in any transaction with any Plaintiff.

NML seeks dismissal of Plaintiffs' claims without leave to amend. The gravamen of the CCAC is an alleged failure to disclose the existence of an alleged defect. Because NML did not engage in any marketing, advertising, or sale of the vehicles at issue, or provide warranties, or otherwise do business with or have a transaction with any Plaintiff, any amendment of the CCAC would be futile and leave to amend should be denied.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support, NNA's previously-filed Request for Judicial Notice and exhibits thereto (Dkt. 43), NML's accompanying Request for Judicial Notice and exhibits thereto, as well as all papers and pleadings on file herein, and such argument as properly may be presented at the hearing.

Dated: June 14, 2019                          DRINKER BIDDLE & REATH LLP


                                              By: /s/ Paul J. Riehle
                                                  Paul J. Riehle
                                                  E. Paul Cauley, Jr. (*pro hac vice*)
                                                  Matthew J. Adler

                                              Attorneys for Defendants
                                              NISSAN NORTH AMERICA, INC. and
                                              NISSAN MOTOR CO., LTD.

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................... 1

II. STATEMENT OF FACTS .................................................................................................... 2

    A.    Plaintiffs' Claims Arise Out of the Sale of the Vehicles and the Warranties Accompanying the Vehicles ................................................................................. 2

    B.    The CCAC Lumps Together Material Allegations Against NNA and NML .......... 4

    C.    The Warranty Booklets and Technical Service Bulletins Referred to in the CCAC on Their Face Were Issued by NNA ............................................................ 5

III. LEGAL ARGUMENT ......................................................................................................... 5

    A.    Plaintiffs' Claims Against NML Should Be Dismissed Because Plaintiffs Fail to Differentiate Their Allegations as Between NNA and NML ....................... 5

        1.    Rule 9(b)'s Particularity Requirement Is Not Satisfied by a Complaint that Fails to Differentiate the Actions of Multiple Defendants .................................................................................................. 5

        2.    Failing to Differentiate Between Defendants Also Violates Rule 8(a)(2)'s Notice Requirement ................................................................... 7

        3.    All of Plaintiffs' Claims Against NML Should Be Dismissed ..................... 8

    B.    Plaintiffs' Claims Against NML Should Be Dismissed Because NML Did Not Issue Any Warranties to Plaintiffs or Engage in Any Transactions with Plaintiffs ................................................................................................................... 9

        1.    The Plausibility Standard under Rule 12(b)(6) ........................................... 9

        2.    Plaintiffs Do Not Plausibly Allege Sales or Warranty Claims Against NML ............................................................................................ 10

        3.    The CCAC Does Not Plausibly Allege NML Was Involved in a Transaction with Plaintiffs as Is Necessary for Plaintiffs' Fraud and Consumer Protection Statute Claims ........................................................ 11

    C.    Leave to Amend Would Be Futile ...................................................................... 13

IV. CONCLUSION .................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allen v. City of Beverly Hills*,
 911 F.2d 367 (9th Cir. 1990) ............................................................................................... 13

*Amburgy v. Express Scripts, Inc.*,
 671 F. Supp. 2d 1046 (E.D. Mo. 2009) ............................................................................... 12

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ............................................................................................................. 9

*Balistreri v. Pacifica Police Dep't*,
 901 F.2d 696 (9th Cir. 1990) ............................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................................. 9

*Bruce v. Harley-Davidson, Inc.*,
 2010 WL 3521775 (C.D. Cal. Jan. 15, 2010) ................................................................... 7, 8

*In re Carrier IQ, Inc.*,
 78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................................. 5

*Cervantes v. Countrywide Home Loans, Inc.*,
 656 F.3d 1034 (9th Cir. 2011) ............................................................................................. 13

*Cirulli* v. *Hyundai Motor Co.*,
 2009 WL 4288367 (C.D. Cal. Nov. 9, 2009) ...................................................................... 11

*Corazon v. Aurora Loan Servs., LLC*,
 2011 WL 1740099 (N.D. Cal. May 5, 2011) ..................................................................... 7, 9

*Corson v. Toyota Motor Sales, USA, Inc.*,
 2013 WL 1802709 (C.D. Cal. Apr. 24, 2013) ...................................................................... 6

*Deteresa* v. *Am. Broadcasting Co.*,
 121 F.3d 460 (9th Cir. 1997) ............................................................................................... 11

*Diamond Real Estate v. Am. Brokers Conduit*,
 2017 WL 412527 (N.D. Cal. Jan. 31, 2017) ..................................................................... 6, 9

*Eurosesmillas, S.A. v. PLC Diagnostics, Inc.*,
 2019 WL 1960342 (N.D. Cal. May 2, 2019) ........................................................................ 6

*Ewing v. 8 Figure Dream Lifestyle, LLC*,
 2019 WL 1429589 (S.D. Cal. Mar. 29, 2019) ...................................................................... 7

*Gidding v. Zurich Am. Ins. Co.*,
 2015 WL 6871990 (N.D. Cal. Nov. 9, 2015) .................................................................... 6, 9

*Johnson v. MetLife Bank, N.A.*,
   883 F. Supp. 2d 542 (E.D. Pa. 2012) ............................................................................... 12

*Karkanen v. California*,
   2018 WL 3820916 (N.D. Cal. Aug. 10, 2018) .................................................................. 7

*Kaufman v. Sirius XM Radio, Inc.*,
   474 F. App'x 5 (2d Cir. 2012) ......................................................................................... 12

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ....................................................................................... 5, 8

*L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc.*,
   121 F. Supp. 2d 147 (D. Mass. 2000) ............................................................................. 12

*Leon v. Tapas & Tintos, Inc.*,
   51 F. Supp. 3d 1290 (S.D. Fla. 2014) ............................................................................. 11

*Manchester v. Sivantos GMBH*,
   2018 WL 587849 (C.D. Cal. Jan. 29, 2018) ..................................................................... 6

*Mandani v. Volkswagen Grp. of Am., Inc.*,
   2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ............................................................... 9, 10

*O'Connor v. California Dep't of Corr. & Rehab.*,
   2019 WL 1934013 (E.D. Cal. May 1, 2019) .................................................................... 7

*Rollolazo v. BMW of N. Am., LLC*,
   2017 WL 1536456 (C.D. Cal. Feb. 3, 2017) .................................................................... 6

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ......................................................................................... 1, 6

*Taft v. The Dade Cty. Bar Ass'n, Inc.*,
   2015 WL 5771811 (S.D. Fla. Oct. 2, 2015) ................................................................... 11

*United States* v. *Corinthian Colleges*,
   655 F.3d 984 (9th Cir. 2011) ............................................................................................ 6

*Wicks v. Chrysler Grp., LLC*,
   2011 WL 3876179 (E.D. Cal. Sept. 1, 2011) ................................................................. 10

*Yan Mei Zheng-Lawson v. Toyota Motor Corp.*,
   2018 WL 2298963 (N.D. Cal. May 21, 2018) .............................................................. 7, 8

**STATUTES, RULES & REGULATIONS**

28 U.S.C. § 1404(a) .................................................................................................................. 2

Cal. Civ. Code § 1770(a) ........................................................................................................ 11

Fed. R. Civ. P. 8(a) ................................................................................................................... 9

Fed. R. Civ. P. 8(a)(2) .............................................................................................. 1, 7, 8, 9

Fed. R. Civ. P. 9(b) .................................................................................................................. *passim*

Fed. R. Civ. P. 12(b) ........................................................................................................................2

Fed. R. Civ. P. 12(b)(6) ........................................................................................................2, 9, 10

NY GBL § 349 ...............................................................................................................................12

# I.

# **INTRODUCTION**

Plaintiffs' Consolidated Class Action Complaint ("CCAC") improperly lumps together allegations against Defendants Nissan Motor Co., Ltd. ("NML") and Nissan North America, Inc. ("NNA"). Because Plaintiffs' complaint sounds in fraud, doing so violates Federal Rule of Civil Procedure 9(b)'s particularly requirement. Plaintiffs' bundled allegations also fail to provide sufficient notice of the alleged claims, in violation of Rule 8(a)(2).

It is well-established that where multiple defendants are sued in connection with an alleged fraudulent scheme, Plaintiffs cannot satisfy Rule 9(b) by "merely lump[ing] multiple defendants together" but rather must "differentiate their allegations" and "*inform each defendant separately* of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (emphasis added).

The CCAC fails to meet this standard here. Instead, Plaintiffs largely allege conduct by "Defendants" or "Nissan" without any effort to distinguish between NML and NNA. By lumping both Defendants together and providing no factual basis to distinguish their conduct, the CCAC does not satisfy the particularity requirement of Rule 9(b) or even basic pleading standards under Rule 8(a)(2).

Plaintiffs' claims also should be dismissed because the CCAC fails to plausibly allege that NML, rather than NNA, issued any warranty to Plaintiffs or otherwise engaged in any transaction with Plaintiffs—critical elements that Plaintiffs must allege to assert claims for breach of warranty, fraudulent omission, and their fraud-based claims under the consumer protection statutes of their various home states. Absent such allegations, Plaintiffs' claims must be dismissed.

Further, Plaintiffs' claims should be dismissed without leave to amend, as NML did not market, advertise, sell or provide warranties for the vehicles at issue, much less do business with or have a transaction with any Plaintiff or putative class member. Thus, any amendment of the CCAC would be futile.

For these reasons, and those set forth below, the Court should grant this Motion and dismiss

NML'S NOTICE OF MOTION AND MOTION TO DISMISS - 1 - CASE NO. 4:18-CV-07292-HSG

Plaintiffs' claims against NML without leave to amend.[1]

## II.

## STATEMENT OF FACTS

The procedural history and many of the facts for this consolidated action are already set forth in detail in NNA's pending Motion to Dismiss or Transfer (Dkt. 42), in which NML has joined. Accordingly, NML hereby incorporates by reference Section II of NNA's Motion. *See* Dkt. 42 at pp. 2–6 (Section II). In addition, NML identifies the following facts, which are relevant to the specific arguments asserted in this motion.

### A. Plaintiffs' Claims Arise Out of the Sale of the Vehicles and the Warranties Accompanying the Vehicles

The CCAC (Dkt. 38) asserts the same 12 claims for relief against both NNA and NML. (*Id.*) Each of the 10 Plaintiffs alleges that he or she is an American citizen who purchased or leased either a Nissan Murano, Rogue, or Rogue Sport vehicle from an authorized or third-party dealer within the United States. (*Id.* ¶¶ 22, 25, 27, 30, 32, 34, 36, 39, 43 (allegations regarding each Plaintiff's purchase or lease).) As detailed below, Plaintiffs' claims arise out of (a) the marketing and sale of the vehicles at issue (Counts 1, 5–12), specifically the alleged non-disclosure of a purported "defect" in the vehicles' automatic emergency braking systems (*see, e.g.*, CCAC ¶ 4 (alleging that vehicles are "marketed as safe for use" and that Defendants "failed to disclose [the alleged defect] . . . at the time of purchase or lease or thereafter"); ¶¶ 60, 61 (same)); and (b) the express or implied warranties accompanying the vehicles (Counts 2–4).

*The overarching, fraud-by-concealment challenge to the marketing and sale of the subject vehicles serves as the basis for each claim for relief asserted by Plaintiffs, other than the warranty claims*:

- Count 1, Fraudulent Omission, CCAC ¶ 110, alleging "Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed, and/or suppressed, and/or

---

[1] NML is separately filing a Notice of Joinder and Joinder in NNA's pending Motion to Dismiss or Transfer for Improper Venue, or in the Alternative, to Transfer under 28 U.S.C. § 1404(a) for the Convenience of Parties and Witnesses, and in the Interests of Justice or, Alternatively, to Dismiss Portions of the CCAC pursuant to Rule 12(b))(6). Dkt. 42. It is NML's position that the transferee Court should decide the Motion to Dismiss pursuant to Rule 12(b)(6) by NNA and this Motion.

omitted material facts;"

- Count 5, Unjust Enrichment, *id.* ¶ 158, alleging "Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the FEB Defect in the Class Vehicles;"

- Count 6, Violation of California's CLRA, *id.* ¶ 172, alleging the "facts concealed or not disclosed by Defendants to Plaintiffs" are ones a reasonable consumer would have considered to be important "in deciding whether or not to purchase the Class Vehicles;"

- Count 7, Violation of California's UCL, *id.* ¶ 184, alleging the same as Count 6;

- Count 8, Violation of Florida's Deceptive and Unfair Trade Practices Act, *id.* ¶ 196, alleging the same;

- Count 9, Violation of the Massachusetts Consumer Protection Act, *id.* ¶ 210, alleging the same;

- Count 10, Violation of the Missouri Merchandising Practices Act, *id.* ¶ 218, alleging "Nissan used or employed deception and fraud, and concealed, suppressed and omitted a material fact in connection with the sale or advertisement of merchandise in trade or commerce;"

- Count 11, Violation of the New York General Business Law § 349, *id.* ¶ 231, alleging "Defendants engaged in deceptive acts or practices when it failed to disclose material information concerning the Class Vehicles which was known to Defendants at the time of the sale;" and

- Count 12, Violation of Pennsylvania's Unfair Trade Practices Consumer Protection Law, *id.* ¶ 240, alleging Defendants "concealed, suppressed and omitted" as to Plaintiff Olkowski "at the time of purchase or lease."

///
///
///
///
///

*The warranty claims are each predicated on the warranties issued, either expressly or by operation of law, by the seller of the vehicles*:

- Count 2, Breach of Express Warranty, *id.* ¶ 122, alleging "[i]n connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles;"
- Count 3, Breach of Implied Warranty, *id.* ¶ 137, alleging the "Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition;" and
- Count 4, Violation of the Magnuson-Moss Warranty Act, *id.* ¶ 145, alleging a claim where warrantor fails to honor an express or implied warranty.

**B.     The CCAC Lumps Together Material Allegations Against NNA and NML**

About the only disparate treatment NML and NNA receive in the CCAC is that NNA is a corporation based in Tennessee and NML is its Japanese parent. (*Id.* ¶¶ 48-49). The vast majority of Plaintiffs' allegations simply lump NNA and NML together—defined collectively as "Nissan"—beginning in the first paragraph. (*Id.* at p. 1:4.) The remainder of the CCAC is replete with undifferentiated references to "Defendants" or a monolithic "Nissan," without any attempt to distinguish the two entities. The following are some examples:

- *Id.* ¶ 7, alleging that "Defendants breached their express and implied warranties;"
- *Id.* ¶ 62, alleging that "Nissan has been aware of problems with the FEB feature since at least 2015, given its release of a series of Technical Service Bulletins ('TSB') to dealers related to the radar sensor;"
- *Id.* ¶ 67, alleging "Nissan released TSB NTB18-041 concerning the 'Unexpected Operation of AEB, FEB OR FCW [Forward Collision Warning]' in 2018 Rogue, Rogue Hybrid, and Rogue Sport vehicles;" and
- *Id.* ¶ 68, alleging "Nissan released TSB PC637 informing dealers it was 'conducting a quality action to reprogram the Laser Radar and Advanced Drive Assist System (ADAS) software the on specific MY2018 Rogue (T32) vehicles built in the Smyrna, TN manufacturing plant."

Beyond NML's status as NNA's parent corporation, the CCAC contains virtually no factual allegations that actually distinguish as between NNA and NML or that specify any independent conduct on the part of NML.

### C. The Warranty Booklets and Technical Service Bulletins Referred to in the CCAC on Their Face Were Issued by NNA

In point of fact, the warranties governing the subject vehicles were issued by NNA alone. *See* NNA's Apr. 22, 2019 Request for Judicial Notice ("NNA RFJN"), Ex. A (Dkt. 43-1) at p. 5 and Ex. B (Dkt. 43-2) at p. 5 (warranty booklets defining "Nissan" as "Nissan North America, Inc.").

Likewise, the TSBs were issued by NNA. *See* NML's accompanying Request for Judicial Notice ("NML RFJN"), Ex. 5, TSB NTB18-041, at p. 1 (TSB issued by "Nissan North America, Inc.") and Ex. 7, TSB PC637 at p. 1 (same), respectively. The other TSBs referred to in the CCAC are attached to NML's RFJN and likewise were issued by "Nissan North America, Inc." *See* NML RFJN, Exs. 1–4, 6 (each at p. 1).

## III.

## LEGAL ARGUMENT

### A. Plaintiffs' Claims Against NML Should Be Dismissed Because Plaintiffs Fail to Differentiate Their Allegations as Between NNA and NML

#### 1. Rule 9(b)'s Particularity Requirement Is Not Satisfied by a Complaint that Fails to Differentiate the Actions of Multiple Defendants

Where a complaint "sound[s] in fraud," it "must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b)," which requires that a plaintiff alleging fraud "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1064 (N.D. Cal. 2015) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). "To satisfy Rule 9(b), the complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Id.* (citations and internal quotation marks omitted). Where claims allege a "unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim, . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,'

1  and the pleading . . . *as a whole* must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567
2  F.3d at 1126 (emphasis added).

3      "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but
4  require[s] plaintiffs to differentiate their allegations when suing more than one defendant and
5  inform each defendant separately of the allegations surrounding his alleged participation in the
6  fraud." *Swartz*, 476 F.3d at 764-65; *see also Eurosesmillas, S.A. v. PLC Diagnostics, Inc.*, 2019
7  WL 1960342, at *5 (N.D. Cal. May 2, 2019) (same). "In the context of a fraud suit involving
8  multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[ ] in the
9  alleged fraudulent scheme." *Id.* (citation and internal quotation marks omitted); *see also United
10 States* v. *Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) ("The Complaint provides no
11 additional detail as to the nature of the Individual Defendants' involvement in the fraudulent acts,
12 but simply attributes wholesale all of the allegations against Corinthian to the Individual
13 Defendants. Rule 9(b) undoubtedly requires more.").

14     This Court and others have, on multiple occasions, dismissed claims sounding in fraud that
15 fail to distinguish between multiple defendants and thus fail to satisfy the pleading standard set forth
16 in Rule 9(b). *See, e.g.*, *Diamond Real Estate v. Am. Brokers Conduit*, 2017 WL 412527, at *5 (N.D.
17 Cal. Jan. 31, 2017) (Gilliam, J.) (dismissing fraud claims under Rule 9(b) in part due to plaintiffs'
18 failure "to identify the role of each defendant"); *Gidding v. Zurich Am. Ins. Co.*, 2015 WL 6871990,
19 at *6 (N.D. Cal. Nov. 9, 2015) (Gilliam, J.) (dismissing statutory claim under Rule 9(b) where
20 Plaintiff failed to "allege with specificity each Defendant's wrongdoing"); *see also Eurosesmillas*,
21 2019 WL 1960342, at *5 (dismissing fraud claim against one co-defendant where the complaint
22 did not allege any misrepresentations or fraudulent statements attributable to that party);
23 *Manchester v. Sivantos GMBH*, 2018 WL 587849, at *4 (C.D. Cal. Jan. 29, 2018) ("Manchester's
24 allegations are not specific enough because she lumps together both defendants and does not
25 attribute specific statements to either one. As pleaded, Manchester has not met her burden under
26 Rule 9(b) …."); *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 1536456, at *21 (C.D. Cal. Feb. 3,
27 2017) (dismissing fraud claims under Rule 9(b) where Plaintiffs lumped allegations together
28 regarding parent corporation and subsidiary and "impermissibly fail[e]d to differentiate between

the allegedly fraudulent conduct of each Defendant."); *Corson v. Toyota Motor Sales, USA, Inc.*, 2013 WL 1802709, at *4 (C.D. Cal. Apr. 24, 2013) (dismissing UCL and CLRA claims pursuant to Rule 9(b) where "Plaintiffs repeatedly refer to the two Defendants collectively as 'Defendants' or 'Toyota' without distinguishing the particular Defendant responsible for each alleged conduct."); *Bruce v. Harley-Davidson, Inc.*, 2010 WL 3521775, at *3-4 (C.D. Cal. Jan. 15, 2010) (dismissing UCL, CLRA, and fraudulent omission claims because, "under Rule 9(b), plaintiffs must specifically allege as to Harley-Davidson, Inc. and Harley-Davidson Motor Company, Inc., their respective roles in the alleged fraudulent scheme.").

### 2. Failing to Differentiate Between Defendants Also Violates Rule 8(a)(2)'s Notice Requirement

Lumping together allegations against multiple defendants also violates the less stringent requirement of Rule 8(a)(2) because it does not give fair notice of the allegations against each defendant. *See Karkanen v. California*, 2018 WL 3820916, at *7 (N.D. Cal. Aug. 10, 2018) ("Courts consistently conclude that a complaint which lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2).") (citation and internal quotation marks omitted); *Ewing v. 8 Figure Dream Lifestyle, LLC*, 2019 WL 1429589, at *5 (S.D. Cal. Mar. 29, 2019) ("Lumping the defendants together when a plaintiff asserts multiple claims against multiple defendants is grounds for dismissal."); *Yan Mei Zheng-Lawson v. Toyota Motor Corp.*, 2018 WL 2298963, at *2 (N.D. Cal. May 21, 2018) ("Allegations which lump multiple defendants together are insufficient to put any one defendant on notice of the conduct upon which the claims against it are based.") (citations omitted); *Corazon v. Aurora Loan Servs., LLC*, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011) ("Undifferentiated pleading against multiple defendants is improper" and violates Rule 8(a)(2) because "it fails to provide [defendant] with fair notice of its alleged misconduct.") (internal quotation marks and citation omitted); *see also O'Connor v. California Dep't of Corr. & Rehab.*, 2019 WL 1934013, at *2 (E.D. Cal. May 1, 2019) (dismissing complaint where plaintiff did not "specifically describe each defendants' involvement" in the conduct at issue).

### 3. All of Plaintiffs' Claims Against NML Should Be Dismissed

As discussed above, the gravamen of this action is fraud by concealment of the alleged automatic emergency braking defect. (*See, e.g.*, CCAC ¶¶ 4, 60-61.) Accordingly, under *Kearns*, the CCAC must, "as a whole," satisfy Rule 9(b). *Kearns*, 567 F.3d at 1126; *Bruce*, 2010 WL 3521775, at *4 ("The Court finds that in so far as plaintiffs' claims are based on allegations of a common course of fraudulent conduct, that the heightened pleading requirements of Rule 9(b) apply.") (citing *Kearns*).

The CCAC fails to meet this standard. Plaintiffs assert largely undifferentiated allegations that simply lump NML together with NNA. (*See supra*, pp. 4–5.) This approach fails to satisfy Rule 9(b)'s particularity requirement and also fails to provide NML with fair notice in violation of Rule 8(a)(2). *See* authorities cited *supra* Section III.A.

Indeed, the CCAC's practice of lumping two separate entities into a single "Nissan" has led to allegations that Plaintiffs know are demonstrably not true. For example, CCAC ¶ 6 alleges that "Defendants" made promises under written warranties. As Plaintiffs are aware, NML issued no warranties to Plaintiffs. *See* NNA's Apr. 22, 2019 RJN, Exs. A, B (warranty booklets). Notably, footnote 2 to CCAC ¶ 6 cites to a URL, "https://owners.nissanusa.com/content/techpub/common/2016/2016-nissan-warranty-booklet.pdf," which links directly to a page on *NNA*'s website containing the 2016 warranty booklet—i.e., the express warranty issued by *NNA*, as discussed above. *See also* CCAC ¶¶ 122 and 146, each alleging "NNA offers a 36-month or 36,000-mile Basic Warranty that 'covers any repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan.'"

Moreover, the ambiguity created by conflating NML and NNA is precisely what Rules 9(b) and Rule 8(a)(2) were designed to avoid. Sweeping allegations that "Nissan" "designed, manufactured, distributed, marketed, sold and/or leased" the vehicles at issue avoids alleging which entity actually did each of the tasks. (CCAC p. 1:11-12.) Allegations such as "Defendants" "misrepresented the standard, quality or grade of" the vehicles at issue (*id.* ¶ 10) have the same

deficiency.[2]

The undifferentiated allegations here resemble those that have been rejected time and time again on either Rule 9(b) or 8(a) grounds. *See, e.g.*, *Diamond Real Estate*, 2017 WL 412527, at *5 (Gilliam, J.) (dismissing claims under Rule 9(b)); *Gidding*, 2015 WL 6871990, at *6 (Gilliam, J.) (same); *Corazon*, 2011 WL 1740099, at *4 (rejecting undifferentiated allegations under Rule 8(a) against loan servicer defendant as "particularly troubling because many of her allegations pertain to the origination, not servicing, of her loan.").

At bottom, Plaintiffs' CCAC, which sounds in fraud, fails to satisfy Rule 9(b)'s heightened pleading standard and also the notice requirement under Rule 8(a)(2). Plaintiffs' claims concern the marketing, sale, and servicing of the vehicles issue—conduct that NML did not perform. By bundling allegations and failing to differentiate NML and NNA, the CCAC violates both Rule 9(b) and 8(a)(2) and should be dismissed as to NML.

**B.   Plaintiffs' Claims Against NML Should Be Dismissed Because NML Did Not Issue Any Warranties to Plaintiffs or Engage in Any Transactions with Plaintiffs**

**1.   The Plausibility Standard under Rule 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), a claim is subject to dismissal if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[2] Plaintiffs cannot rely on the CCAC's conclusory allegations of a purported agency or alter ego relationship between NML and NNA. (*See* CCAC ¶ 51 (alleging "unity of ownership" between NML and NNA such that "each of them is the alter ego" of the other, and that "each Defendant was acting as an agent and/or employee of the other Defendant").) Such allegations are wholly conclusory, devoid of any facts, and should be disregarded. *See Yan Mei Zheng-Lawson v. Toyota Motor Corp.*, 2018 WL 2298963, at *2 (N.D. Cal. May 21, 2018) ("Plaintiffs must allege facts adequate to put *each* defendant on notice regarding the bases of the claims against it. If the relevant facts relate to alter ego, agency, or some other relationship giving rise to liability of one entity for the conduct of another, the relationship should be explained in sufficient detail to allege plausibly that each defendant is liable for the specified conduct.") (citation omitted); *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *2 (N.D. Cal. Feb. 15, 2019) (Gilliam, J.) (on motion to dismiss, "courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citation and internal quotation marks omitted).

678 (2009) (citation omitted). A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570. Dismissal under Rule 12(b)(6) may be based on either (1) the "lack of a cognizable legal theory" or (2) "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), "courts do not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *2 (N.D. Cal. Feb. 15, 2019) (Gilliam, J.) (citation and internal quotation marks omitted).

### 2. Plaintiffs Do Not Plausibly Allege Sales or Warranty Claims Against NML

#### a. NNA Issued the Warranty and the CCAC Does Not Plausibly Allege Otherwise

Plaintiffs' warranty claims are premised solely on the warranty *issued by NNA*, not NML, and Plaintiffs do not plausibly allege that NML issued any warranty for the subject vehicles, either separately or jointly with NNA. As shown, the written warranty referenced in the CCAC states, on its face, that it was issued by NNA. NNA RFJN Exs. A at p. 5, B at p. 5 (warranty booklets defining "Nissan" as "Nissan North America, Inc."). Likewise, the TSBs were issued by NNA, not NML. *See* NML RFJN, Exs. 1–7 (each at p. 1) (TSBs issued by "Nissan North America, Inc.").

Plaintiffs make no plausible allegation that any of them is a party to a warranty agreement with NML. Because NML was not the warrantor of Plaintiffs' vehicles, Plaintiffs' express warranty claims against NML should be dismissed. Further, because NML was not the seller of Plaintiffs' vehicles, and indeed did not enter into any transaction with any Plaintiff (*see* discussion *infra*), no warranty of merchantability arises by operation of law, and Plaintiffs' implied warranty claims against NML should likewise be dismissed. Finally, Plaintiffs' derivative Magnuson-Moss claim fails in the absence of a valid warranty claim.

Notably, this Court recently dismissed warranty claims as to two out of three defendants precisely because those two entities did not actually provide the written warranty at issue. *See Mandani*, 2019 WL 652867, at *3 (Gilliam, J.); *see also, e.g.*, *Wicks v. Chrysler Grp., LLC*, 2011 WL 3876179, at *2 (E.D. Cal. Sept. 1, 2011) (dismissing warranty claim where "warranty was

provided by Chrysler LLC . . . not defendant").

Here, Plaintiffs fail to—and, indeed, cannot—plausibly allege that NML issued any warranty. The warranty was issued solely by NNA. NNA RFJN, Exs. A, B. Thus, Plaintiffs' warranty claims against NML (Counts 2–4) should be dismissed.

### 3. The CCAC Does Not Plausibly Allege NML Was Involved in a Transaction with Plaintiffs as Is Necessary for Plaintiffs' Fraud and Consumer Protection Statute Claims

Plaintiffs' fraud, unjust enrichment, and fraud-based claims under various state consumer protection statutes fare no better, as each of these claims is premised on and requires that NML engaged in a transaction with Plaintiffs. Plaintiffs do not plausibly allege the requisite transaction here.

Plaintiffs' fraudulent omission claim requires the *seller* to have made a misrepresentation or actionable omission concerning the product's attributes. A duty to disclose requires either a fiduciary relationship or "some other relationship" that is "created by transactions between parties." *Deteresa* v. *Am. Broadcasting Co.,* 121 F.3d 460, 467 (9th Cir. 1997) (rejecting duty to disclose for lack of a transaction between the parties). Here, Plaintiffs do not plausibly allege that NML sold any of the vehicles at issue.

Likewise, the statutory claims asserted by Plaintiffs under California, Florida, Massachusetts, Missouri, New York, and Pennsylvania law are each directed to allegedly unlawful conduct occurring in a consumer transaction:

- **California**: *See* Cal. Civ. Code § 1770(a) (California's Consumers Legal Remedies Act ("CLRA"), prohibiting specified "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction"); *Cirulli* v. *Hyundai Motor Co.,* 2009 WL 4288367, at *4-5 (C.D. Cal. Nov. 9, 2009) (dismissing CLRA claim and claim under California's Unfair Competition Law against vehicle distributor's foreign parent because there was no permissible inference Plaintiff entered into a transaction with parent);
- **Florida**: *See Taft v. The Dade Cty. Bar Ass'n, Inc.*, 2015 WL 5771811, at *4 (S.D. Fla. Oct. 2, 2015) (finding that Florida's Deceptive and Unfair Trade Practices Act

1   ("FDUTPA") "applies only to a consumer injured by an unfair or deceptive act when buying or purchasing goods and services"); *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014) (dismissing FDUTPA claim where plaintiff had not "engaged in any consumer transaction");

- **Massachusetts**: *See L.B. Corp. v. Schweitzer-Mauduit Int'l, Inc.*, 121 F. Supp. 2d 147, 152 (D. Mass. 2000) ("plaintiff must allege some sort of transaction between the parties for liability to attach under [Mass. Gen. Laws ch. 93A] sections two and eleven.");

- **Missouri**: *See Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1057 (E.D. Mo. 2009) (explaining that a cause of action under Missouri's Merchandising Practices Act "is given only to one who purchases and suffers damage. One . . . who never . . . pays anything of value cannot be said to have suffered damage [under the MMPA] by reason of any unlawful practice.") (citation omitted);

- **New York**: *See Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 8 (2d Cir. 2012) (discussing New York General Business Law § 349's requirement that plaintiff allege an "intrastate transaction" that caused the alleged harm); and

- **Pennsylvania**: *See Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 548 (E.D. Pa. 2012) ("standing [under Pennsylvania's Unfair Trade Practices and Consumer Protection Law] does not extend to a plaintiff lacking any commercial dealings with the defendant or to a party who made no purchase.") (citation and internal quotation marks omitted).

Similarly, Plaintiffs' claim for unjust enrichment depends on an alleged consumer transaction in which "Defendants" allegedly profited from the "lease and sale" of Plaintiffs' vehicles. (CCAC ¶ 158.)

Here, Plaintiffs fail to—and, indeed, cannot—plausibly allege that they entered into any transaction with NML; indeed, no facts whatsoever are alleged other than the conclusory and improperly-bundled allegation that "Nissan" or "Defendants" sold the vehicles at issue. Certainly, no facts are alleged that would even come close to satisfying the heightened pleading standard for fraud and fraud-based claims under Rule 9(b). Thus, Plaintiffs' remaining claims for fraudulent

omission, unjust enrichment, and under various state consumer protection statutes should be dismissed on this separate ground.

### C. Leave to Amend Would Be Futile

Dismissal of a claim should be without leave to amend where a "plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citation and internal quotation marks omitted).

No amendment should be permitted here. At their core, all of Plaintiffs' claims against NML are premised on an alleged failure to disclose an alleged defect or a breach of warranty. But NML made no representations, warranties, or sales to Plaintiffs. NML did not advertise or market the vehicles. Plaintiffs fail to allege any transactions with NML. Even if Plaintiffs separated their allegations against NNA and NML in a further amended complaint, they could not truthfully allege any facts against NML that would withstand a motion to dismiss. Thus, any further amendment would be futile and a waste of judicial resources.

## IV.

## CONCLUSION

For these reasons, NML respectfully requests that the Court grant its Motion and dismiss all of Plaintiffs' claims as to NML.

Dated: June 14, 2019                                      DRINKER BIDDLE & REATH LLP


By: /s/ Paul J. Riehle
Paul J. Riehle
E. Paul Cauley, Jr. (*pro hac vice*)
Matthew J. Adler

Attorneys for Defendants
NISSAN NORTH AMERICA, INC. and
NISSAN MOTOR CO., LTD.