UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NISSAN NORTH AMERICA, INC. LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 18-cv-07292-HSG<br><br>**ORDER ON MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE AND MOTION TO APPOINT INTERIM COUNSEL**<br><br>Re: Dkt. Nos. 12, 42 |

Pending before the Court is Defendant Nissan North America, Inc.'s ("NNA's") motion to dismiss or transfer for improper venue or, alternatively, motion to dismiss the consolidated class action complaint ("CCAC") for failure to state a claim. Dkt. No. 42 ("Mot."). Defendant Nissan Motor Co., Ltd. ("NML"), NNA's parent company, joined NNA's motion in its entirety. Dkt. No. 51. Plaintiffs also filed a motion to consolidate and appoint Plaintiffs' counsel as interim counsel. For the reasons set forth below, the Court **GRANTS** Defendant NNA's motion to transfer and **TRANSFERS** this action to the Middle District of Tennessee. The Court also **TERMINATES AS MOOT** Plaintiffs' motion to consolidate and **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to appoint interim counsel.

**I. BACKGROUND**

Plaintiffs bring this putative class action individually and on behalf of nationwide and statewide classes consisting of all persons who purchased, own, owned, lease, or leased a "Class Vehicle," defined as a 2015 or newer Nissan or Infiniti vehicle equipped with Forward Emergency Braking ("FEB") or Automatic Emergency Braking ("AEB").[1] Dkt. No. 38 ("CCAC") at 1.

---

[1] Plaintiffs define "Forward Emergency Braking" and "Automatic Emergency Braking" collectively as the "FEB system." CCAC at 1. To avoid any confusion, the Court will refer to both collectively as "braking technology" or "braking system."

Plaintiffs in this case are ten individuals who purchased or leased a Class Vehicle from a dealer in their respective home states or online. CCAC ¶¶ 22–44. They are citizens of the following states: California (Robert Garneau); Florida (Courtney Johnson and Rhonda Perry); Massachusetts (David Turner); Missouri (Scott Reeves and Jane Reeves); New York (Lisa Hendrickson and Nancy Housell); Pennsylvania (Jeff Olkowski), and Texas (Vaughn Kerkorian). *Id*. ¶¶ 22–39. NNA is incorporated in California and has its principal place of business in Tennessee. Dkt. 19-2, Declaration of Lori McPherson ("McPherson Decl.") ¶¶ 4–5; [2] *see* CCAC ¶ 48. NML is a Japanese corporation headquartered in Yokohama, Japan. CCAC ¶ 49.

The crux of Plaintiffs' CCAC is that Defendants allegedly concealed a defect in the Class Vehicles' braking system. *Id*. ¶ 2. The braking technology operates by monitoring a vehicle's proximity to the vehicle ahead and giving the driver audible and visual display warnings if the system detects a potential frontal collision. *Id*. ¶ 1. If the driver fails to respond, the brakes apply automatically to avoid the collision or, if collision is unavoidable, the braking system reduces the speed of the impact. *Id.* But a purported defect in the braking technology causes the braking system to deactivate or falsely engage, thereby triggering the brakes even when there is no car or obstacle ahead. *Id.* ¶¶ 2, 57. Plaintiffs allege that Defendants were aware of but failed to disclose material facts regarding the defect at the time of any purchase or repair of the Class Vehicles. *Id*. ¶¶ 59–61. According to Plaintiffs, NNA has been aware of the issues with the braking system "since at least 2015." *Id*. ¶ 62. Based on these facts, Plaintiffs also allege breach of warranty and violations of several state consumer protection statutes *Id*. ¶¶ 116–283.

## II. MOTION TO APPOINT INTERIM COUNSEL

Cathy Bashaw, a citizen of New York, initially filed this action against Defendants on November 30, 2018. Dkt. No. 1 ("*Bashaw* action"). Plaintiffs Kerkorian and Turner filed an action assigned to the Honorable Magistrate Judge Donna M. Ryu on December 31, 2018 ("*Kerkorian* action"), which the Court ordered related to the *Bashaw* action on January 11, 2019. Dkt. No. 14. The Court then consolidated the two actions. Dkt. Nos. 33, 35. Shortly thereafter,

---

[2] Lori McPherson is the Senior Paralegal for NNA. McPherson Decl. ¶ 1.

Plaintiffs filed their operative complaint, adding the new Named Plaintiffs but removing Ms. Bashaw. *See generally* CCAC. Before the Court consolidated the *Bashaw* and *Kerkorian* actions, Plaintiffs moved to consolidate and appoint Plaintiffs' counsel as interim counsel under Federal Rule of Civil Procedure 23(g). Dkt. No. 12. NNA opposes appointment of interim class counsel, as it contends that there is no conflict or discord among counsel, and Plaintiffs do not show why it is necessary to appoint interim class counsel. Dkt. No. 18. The Court agrees with NNA.

Under Federal Rule of Civil Procedure 23(g)(3), a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23. A court should "designate interim counsel during the pre-certification period if necessary to protect the interests of the putative class." *Wang v. OCZ Tech. Grp., Inc.*, No. C 11-01415 PSG, at *4 (N.D. Cal. June 29, 2011) (citing Fed. R. Civ. P. 23).

The Court finds that the consolidated action does not present the "special circumstances" that warrant appointment of interim counsel at this stage. *See In re Nest Labs Litig.*, No. 14-cv-01363-BLF, 2014 U.S. Dist. LEXIS 115596, at *4 (N.D. Cal. Aug. 18, 2014). The *Bashaw* and *Kerkorian* actions have been consolidated, and there thus exists a single consolidated action for which Plaintiffs already filed a consolidated complaint. Under these circumstances, the Court sees no potential harm to the interests of the putative class that appointment of interim counsel will remedy. *See Letizia v. Facebook Inc.*, No. 16-CV-06232-TEH, 2017 WL 1477158, at *2 (N.D. Cal. Apr. 25, 2017).

Moreover, Plaintiffs seek appointment of four firms as interim counsel. There is no rivalry between the firms or signs that a rivalry exists: instead, the firms have already demonstrated their ability to cooperate and work together by filing the CCAC. *See generally* CCAC; *see also Letizia*, 2017 WL 1477158, at *3 ("Here, like the plaintiffs in *In re Nest*, the separate plaintiffs' counsel are presently collaborating and the parties have not shown any signs that a rivalry exists."). "Where there are no competing lawsuits or firms, courts in this district have been unwilling to appoint interim class counsel." *See In re Seagate Tech. LLC Litig.*, No. 16-cv-00523-RMW, 2016 WL 3401989 (N.D. Cal. June 21, 2016) (collecting cases).

The Court sees no purpose to be served in appointing the four firms as interim counsel

under these circumstances. It is not "necessary to appoint interim class counsel merely to maintain the *status quo*." *Letizia*, 2017 WL 1477158, at *3. Accordingly, the Court **TERMINATES AS MOOT** Plaintiffs' motion to consolidate and **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to appoint interim counsel.

### III. MOTION TO DISMISS UNDER RULE 12(B)(3) FOR IMPROPER VENUE

NNA moves to dismiss nine of the ten Plaintiffs for improper venue under 28 U.S.C. § 1391(b). Alternatively, NNA moves to transfer the entire action to the Middle District of Tennessee under 28 U.S.C. § 1404(a). The Court agrees that venue is not appropriate for nine of the ten Plaintiffs, and could dismiss the nine Plaintiffs on those grounds. However, for the convenience of the parties and witnesses, and in the interest of justice, the Court in its discretion will instead transfer the entire action to the Middle District of Tennessee.

The Court first addresses why venue is improper for the nine nonresident Plaintiffs.

#### A. Legal Standard

Under Federal Rule of 12(b)(3), a party may move to dismiss an action for improper venue. Fed. R. Civ. P. 12(b)(3). Venue in a civil action is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The first two sections of § 1391(b) "define the preferred judicial districts for venue in a typical case," whereas subsection (3) is a "fallback option." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 57 (2013). This ensures that "so long as a federal court has personal jurisdiction over the defendant, venue will always lie somewhere." *Id.*

Once a defendant challenges venue, the plaintiff has the burden of demonstrating that venue is proper in the chosen district. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). A plaintiff asserting multiple claims must establish that venue is proper as to each claim. *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733,

4

751 (N.D. Cal. 2015) (citation omitted). In determining whether venue is proper, courts may consider evidence outside the pleadings. *See Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

### B. Discussion

#### i. Venue Under § 1391(b)(1)

Under § 1391(b)(1), venue is proper in any district where a defendant resides. 28 U.S.C. § 1391(b)(1). In a state with multiple judicial districts, for purposes of venue, a defendant corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that were a separate State." *Id*. § 1391(d). NNA argues that venue is improper under § 1391(b)(1) because Plaintiffs cannot establish that NNA is subject to personal jurisdiction in the Northern District of California. Mot. at 8–12.

There are two categories of personal jurisdiction a plaintiff can invoke: general and specific. *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1068 (9th Cir. 2015). "If the defendant's activities in the forum are substantial, continuous and systematic, general jurisdiction is available; in other words, the foreign defendant is subject to suit even on matters unrelated to his or her contacts to the forum." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001). The Supreme Court has held that the "paradigm forums" for the exercise of general jurisdiction are an individual's domicile and a corporation's place of incorporation and principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014). This is in contrast to specific jurisdiction, which "exists when a case arises out of or relates to the defendant's contacts with the forum." *Ranza*, 793 F.3d at 1068 (quotations and citations omitted). It "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.*

While questions of venue and personal jurisdiction are related, the Ninth Circuit has made clear that the two inquiries are distinct, as "[j]urisdiction is the *power* to adjudicate, while venue, which relates to the place where judicial authority may be exercised, is intended for the *convenience* of the litigants." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d

1174, 1179 (9th Cir. 2004) (citations and quotations omitted and alterations in original). "The Supreme Court has emphasized the distinction between these concepts, writing that '[t]his basic difference between the court's power and the litigant's convenience is historic in the federal courts.'" *Id.* (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939)).

### 1. General Jurisdiction

A limited number of courts have addressed whether a defendant's incorporation in a multi-district state provides a basis for general jurisdiction in each district within that state. Plaintiffs argue that NNA is subject to general jurisdiction in each district in California by virtue of being incorporated in California. *See* Dkt. No. 44 ("Opp.") at 4–5. But courts that have addressed this issue have declined to follow Plaintiffs' approach, instead considering the district as if it were a separate state. *See, e.g.*, *Surface Supplied Inc. v. Kirby Morgan Dive Sys., Inc.*, No. C 13-575 MMC, 2013 WL 2355446, at *2–3 (N.D. Cal. May 29, 2013); *Stohl v. Magic Mountain, LLC*, No. 2:17-CV-01858-TLN-DB, 2019 WL 498993, at *5 (E.D. Cal. Feb. 8, 2019) (collecting cases); *Travelers Prop. Cas. Co. of Am. v. Hume Lake Christian Camps, Inc.*, No. 17-CV-1600 JLS (KSC), 2018 WL 280025, at *2 (S.D. Cal. Jan. 3, 2018); *ICA Grp., LLC v. Taggart Glob., LLC*, No. CIV.A. 12-6156, 2013 WL 159936, at *3 (E.D. Pa. Jan. 15, 2013); *Tranor v. Brown*, 913 F. Supp. 388, 390 (E.D. Pa. 1996). The courts that have articulated their reasoning found this approach to be consistent with the legislative intent of § 1391(c) to ensure that "corporate defendants cannot be sued in districts within their state of incorporation with which they have no contacts." *See Tranor*, 913 F. Supp. at 390 (citations and quotations omitted); *see also ICA Grp.*, 2013 WL 159936, at *2–3; *Stohl*, 2019 WL 498993, at *5 ("These courts reason that the legislative history of the 1998 amendment to § 1391(c) dictates a finding that a corporation does not reside in every district in a multi-district state merely because the corporation is incorporated in that state."). The Court finds this reasoning persuasive, and Plaintiffs do not provide any compelling authority to the contrary.

Accordingly, because NNA is registered in the Eastern District of California and its principal place of business is in Tennessee, *see* McPherson Decl. ¶¶ 4–5, NNA is not subject to

general jurisdiction in this district under § 1391(d).[3]

### 2. Specific Jurisdiction

Specific personal jurisdiction exists when (1) the nonresident defendant purposefully directs activities to the forum or purposefully avails itself of the privilege of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri Al S*, 52 F.3d 267, 270 (9th Cir. 1995). The plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger*, 374 F.3d at 802.

Purposeful availment and purposeful direction are distinct concepts. *Schwarzenegger*, 374 F.3d at 802. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In return for availing itself of the benefits and protections of the forum state's laws, the defendant must "submit to the burdens of litigation in that forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). By contrast, a "showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803. Due process allows "the exercise of personal jurisdiction over a defendant who 'purposefully direct[s]' his activities at residents of a forum, even in the 'absence of physical contacts' with the forum." *Id.* (quoting *Burger King*, 471 U.S. at 476).

Plaintiffs argue that NNA is subject to specific personal jurisdiction in this district because NNA purportedly has contacts here related to the development and design of the braking

---

[3] As to NML, Plaintiffs have not made any showing that NML has the "continuous and systematic" contacts that would render it "essentially at home" in this district. *Daimler*, 571 U.S. at 126.

7

technology. Opp. at 4–5. NNA concedes that it is subject to specific jurisdiction with respect to Plaintiff Garneau's claims, as he purchased his Class Vehicle in this district, but it argues that none of the nonresident Plaintiffs' claims relate to any activities by Defendants in California. Mot. at 9.

As support for their position, Plaintiffs allege that the Nissan Research Center Silicon Valley ("NRC-SV") researched and developed the braking technology at issue. *See* CCAC ¶ 15; Opp. at 2–3. NNA disputes NRC-SV's involvement, and submitted a declaration from Maarten Sierhuis, the Chief Technology Director of NRC-SV, stating that the research facility had "no involvement in the research, development, design or testing of Forward Emergency Braking/Automatic Emergency Braking technology in any Nissan or Infiniti vehicles sold, currently or in the past, in the U.S. Market." Dkt. No. 56, Supplemental Declaration of Maarten Sierhuis ("Sierhuis Decl.") ¶ 8. Instead, the engineers with knowledge of the braking technology are located at NNA's headquarters in Franklin, Tennessee. Dkt. No. 19-1, Declaration of Martin Lambrecht ("Lambrecht Decl.") ¶ 5.[4] Plaintiffs present no evidence to the contrary, and therefore fail to meet their burden of establishing that NRC-SV's presence in this district is a basis for personal jurisdiction. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (for purposes of personal jurisdiction, courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit" (citation omitted)); *Alexander v. Circus Enters, Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (same); *see also Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977) (holding that the plaintiff "could not simply rest on the bare allegations of its complaint, but rather was obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction"); *Tatung Co., Ltd. v. Shu Tze Hsu*, No. SACV131743DOCANX, 2016 WL 7508190, at *8 (C.D. Cal. Aug. 18, 2016) ("If the defendant adduces evidence controverting the allegations, however, the plaintiff must 'come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" (citation omitted)).

More fundamentally, critically lacking from Plaintiffs' own allegations and the record

---

[4] Martin Lambrecht is the Manager of Total Customer Satisfaction, Field Quality Investigations for NNA. Lambrecht Decl. ¶ 1.

8

1 presented is any evidence that Defendants had any contacts in California concerning the sale and
2 marketing of the Class Vehicles to Plaintiffs (with the exception of Plaintiff Garneau). Plaintiffs'
3 allegations arise from Defendants' claimed non-disclosure of the braking defect. *See* CCAC
4 ¶¶ 108–243 (bringing claims of fraudulent omission, breach of express and implied warranty, and
5 other claims related to Defendants' failure to disclose the defect to Plaintiffs). The Court is not
6 persuaded that the mere presence of a research facility in this district, especially one with no
7 involvement in the braking technology, establishes that Defendants have any connection to this
8 forum that would make it reasonable to hale Defendants into court here for claims related to the
9 advertising and sale of vehicles outside this forum. *See Bristol-Myers Squibb Co. v. Superior*
10 *Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) ("Nor is it sufficient—or
11 even relevant—that BMS conducted research in California on matters unrelated to [the product].
12 What is needed—and what is missing here—is a connection between the forum and the specific
13 claims at issue."). Plaintiffs have not identified any link between this forum and the nonresident
14 Plaintiffs' claims, as those Plaintiffs did not purchase the vehicles in this forum, or even in
15 California. *See* CCAC ¶¶ 23–44 (allegations that all Plaintiffs except Garneau purchased vehicles
16 outside of California); *see also Bristol-Myers Squibb*, 137 S. Ct. at 1781 ("The mere fact
17 that *other* plaintiffs were prescribed, obtained, and ingested [the product] in California—and
18 allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert
19 specific jurisdiction over the nonresidents' claims.").
20 Thus, the Court finds that Plaintiffs have not carried their burden of demonstrating that the
21 nonresidents' claims arise out of Defendants' activities in this district. With the exception of
22 Plaintiff Garneau, the Court finds that venue does not lie here under § 1391(b)(1).

### ii. Venue Under § 1391(b)(2)

24 Venue is also proper in a "judicial district in which a substantial part of the events or
25 omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). For the same reasons as set
26 forth above, a substantial part of the events alleged occurred in locations other than in this district.
27 The Class Vehicle sales for the nine nonresident Plaintiffs did not take place in this district. *See*
28 CCAC ¶¶ 23–44. Nor is there any showing that Defendants engaged in any advertising or

1  marketing-related activities in this forum that caused the nonresident Plaintiffs to purchase the

2  Class Vehicles in their respective home states. Venue for the nonresident Plaintiffs' claims does

3  not lie in this district under § 1391(b)(2).

### iii. Venue Under § 1391(b)(3)

Section 1391(b)(3), the "fallback option," only applies when there is "no district in which an action may otherwise be brought as provided in this section." 28 U.S.C. § 1391(b)(3); *see Atl. Marine*, 571 U.S. at 57. The parties do not dispute that NNA is a resident of the Middle District of Tennessee, its principal place of business. *See* Mot. at 12. This provision therefore does not apply.

### iv. Jurisdictional Discovery is Not Warranted

Plaintiffs submit that they are entitled to "narrowly-tailored jurisdictional discovery in order to establish that venue is proper." Opp. at 8. NNA argues that no jurisdictional discovery is warranted, as "no amount of discovery can change the material facts that make the Northern District an improper venue for 9 of 10 Plaintiffs." Dkt. No. 48 ("Reply") at 4.

A district court has "broad discretion" to permit or deny jurisdictional discovery. *Butcher's Union Local No. 498 v. SDC Investment, Inc.,* 788 F.2d 535, 540 (9th Cir. 1986). "Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Id*. (citation omitted). But where "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) (citation and quotations omitted); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (district court did not abuse its discretion in denying jurisdictional discovery when request was "based on little more than a hunch that it might yield jurisdictionally relevant facts"). The Ninth Circuit has held that it will not reverse a district court's decision denying jurisdictional discovery except "upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Butcher's Union*, 788 F.2d at 540 (citation and quotations omitted).

Plaintiffs' conclusory assertion that jurisdictional discovery "would reveal the full degree to which NNA maintains contacts in this District," Opp. at 8, is not a sufficient basis to warrant such discovery. *See Butcher's Union*, 788 F.2d at 540 (mere "belief" and "speculation" do not justify jurisdictional discovery). They do not allege that there was any activity or contact in this district regarding the sale or marketing of the Class Vehicles of the nonresident Plaintiffs. Nor have Plaintiffs identified any specific facts showing such a connection, as the CCAC alleges the opposite: the nonresident Plaintiffs purchased their Class Vehicles in their home states (or online for Plaintiff Perry), were injured in their home states, and interacted with Nissan representatives in their home states. *See* CCAC ¶¶ 23–44. Further, Plaintiffs' alleged link to this forum was unequivocally controverted by Defendants' affidavit confirming that the facility in this district had no involvement with the braking technology. *See* Sierhuis Decl. ¶ 8. In light of this specific denial, and given Plaintiffs' failure to proffer any evidence suggesting otherwise, the Court "need not even permit limited discovery." *See Getz*, 654 F.3d at 860.

\*     \*     \*

The Court finds that venue does not properly lie in this district for the claims of any of the nonresident Plaintiffs. Therefore, the Court may dismiss, "or if it be in the interest of justice, transfer such case to any district in which it could have been brought." 28 U.S.C. § 1406(a). Transfer will normally be in the interest of justice "because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *Amity Rubberized Pen Co. v. Market Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (citations omitted).

Because venue is proper in this district for Plaintiff Garneau, the Court considers whether transfer of the entire action is appropriate pursuant to 28 U.S.C. § 1404.

**IV.    MOTION TO TRANSFER UNDER 28 U.S.C. § 1404**

    **A.  Legal Standard**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). The transfer statute exists "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and

11

expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted). The moving party bears the burden of showing that the transferee district is a "more appropriate forum." *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000). And the district court has broad discretion in deciding whether or not to transfer an action. *See Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007) ("[T]he district court's decision to change venue is reviewed for abuse of discretion. Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.") (citations and quotations omitted).

The Court engages in a two-step analysis in deciding a motion to transfer. First, it determines "whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (quoting 28 U.S.C. § 1404(a)). If so, the Court engages in an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622)). In this district, courts typically consider the following factors: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum. *See, e.g.*, *Perez v. Performance Food Grp., Inc.*, No. 15-cv-02390-HSG, 2017 WL 66874, at *2 (N.D. Cal. Jan. 6, 2017); *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at *2 (N.D. Cal. Feb. 14, 2014); *Wilson v. Walgreen Co.*, No. C-11-2930 EMC, 2011 WL 4345079, at *2 (N.D. Cal. Sept. 14, 2011).[5] "This list is non-exclusive, and courts may consider other factors, or only those factors which are pertinent to the case at hand." *Martin v. Glob. Tel*Link Corp.*, No. 15-CV-00449-YGR, 2015 WL 2124379, at *2 (N.D. Cal. May 6, 2015).

The Court declines to consider one of the eight factors typically considered by courts in this district: court congestion.[6] Instead, it separately considers one of the factors suggested by the

---

[5] These factors are "[c]onsistent" with Ninth Circuit precedent. *See Wilson*, 2011 WL 4345079, at *2; *see also Jones*, 211 F.3d at 498–99 (listing eight *examples* of factors that courts may consider).
[6] The Court does not compare the court congestion and time of trial in the two districts because ongoing application of this doctrine could have the unintended consequence of penalizing

12

Ninth Circuit: "differences in the costs of litigation in the two forums." *See Jones*, 211 F.3d at 499. Balancing the relevant factors, the Court finds that transfer is warranted.

### B. Discussion

#### i. This Case Could Have Been Brought in the Middle District of Tennessee

A transferee district in which the action might have been brought is one: "(1) that has subject matter jurisdiction; (2) where defendant would have been subject to personal jurisdiction; and (3) venue would have been proper." *Brown*, 2014 WL 715082, at *3 (citing *Hoffman*, 363 U.S. at 343–44). The Court finds that this threshold requirement is met.

Neither party disputes that this case could have been brought in the Middle District of Tennessee. First, that court has subject matter jurisdiction based on the CCAC's allegations. Plaintiffs bring a claim under federal law and invoke jurisdiction under the Class Action Fairness Act. CCAC ¶¶ 13, 139–53. Second, NNA would have been subject to personal jurisdiction in Tennessee, because NNA's principal place of business is located there. McPherson Decl. ¶ 5; *see Daimler*, 571 U.S. at 134 ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."). Third, venue properly lies in the Middle District of Tennessee. NNA's principal place of business is in Franklin, Tennessee, which is located in that district. McPherson Decl. ¶ 5; Mot. at 12; *see* 28 U.S.C. § 1391(b)(1).

#### ii. Considerations of Convenience and Fairness Favor Transfer

As for the second step of the transfer analysis, the Court notes that the only factors Plaintiffs identify which assertedly make this district a more convenient forum are that Plaintiff Garneau purchased his Class Vehicle here, and the now-rebutted assertion that NNA "developed the technology at issue in this District." Opp. at 9. As discussed above, Defendants' witness avers in an affidavit that the NRC-SV research facility did not have any involvement with the braking technology in this case, Sierhuis Decl. ¶¶ 8–9, and Plaintiffs fail to produce any evidence

---

efficiency by effectively placing more cases in the districts with the shortest time to trial. In addition, the Court is somewhat skeptical of the ability of the Court or the parties to accurately and meaningfully capture these metrics as of *today*, which is the only timeframe that matters for this purpose.

controverting this claim. All things considered, one resident Plaintiff's purchase of a Class Vehicle in this forum is not sufficient to override the considerations of fairness and convenience of the other parties and witnesses who have no connection to this forum.

### 1. Plaintiffs' Choice of Forum and Convenience of the Parties

Although Plaintiffs argue that their choice of forum should be given "substantial weight," Opp. at 9, Plaintiffs' choice of forum is given less weight where, as here, Plaintiffs seek to represent a class. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[W]hen an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight."). In addition, "where the plaintiff resides outside of the chosen forum, his choice of forum is entitled to less weight." *Papasan v. Dometic Corp.*, No. 16-CV-02117-HSG, 2018 WL 1367341, at *2 (N.D. Cal. Mar. 16, 2018) (citation omitted). "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [Plaintiff's] choice is entitled to only minimal consideration." *Lou*, 834 F.2d at 739.

Here, nine of ten Named Plaintiffs reside outside of California. CCAC ¶¶ 22–44. The only relevant connection to this forum Plaintiffs raise is that "Plaintiff Garneau resides in this District, was exposed to Defendant's misleading conduct in this District, purchased a Class Vehicle in this District, and thus was injured in this District." Opp. at 9. Yet they fail to account for the nine Plaintiffs who all reside outside of California, were exposed to Defendants' allegedly misleading conduct outside of California, purchased a Class Vehicle outside of California, and were injured outside of California. *See* CCAC ¶¶ 23–44.

Further, the convenience of the parties also favors transfer. The Court agrees with NNA that a transfer to the Middle District of Tennessee would seem to be "equally convenient, if not *more convenient*," for the nine nonresident Plaintiffs, given that proceeding in the Middle District of Tennessee would "bring the action closer to each of their home states." *See* Mot. at 13. The record also shows that transfer would be significantly more convenient for NNA, as its principal place of business is in the Middle District of Tennessee. McPherson Decl. ¶ 5. The Court finds that the "substantial number of non-resident named Plaintiffs cuts against Plaintiffs' claim that it is

more convenient for the parties to litigate here." *Papasan*, 2018 WL 1367341, at *2.[7]

### 2. Convenience of Witnesses and Ease of Access to Evidence

As to ease of access to evidence, NNA concedes that the availability of electronic evidence makes this factor neutral. Reply at 6. For witnesses, NNA posits that it would be more convenient for its own witnesses to testify if the action were located in Tennessee, given the proximity to its headquarters. Mot. at 14. With respect to non-party witnesses, NNA proffers that they would likely be found in Plaintiffs' home states. *Id*. The Court agrees that transfer would presumably be more convenient for those non-party witnesses, because any non-party witnesses outside of California who would have to be compelled to testify may be "beyond the Court's subpoena power absent transfer." *See id*. (citing Fed. R. Civ. P. 45(c) (limiting subpoena power under most circumstances to "within 100 miles of where the person resides, is employed, or regularly transacts business in person")); *see also Jones*, 211 F.3d at 498–99 (noting that courts may consider "the availability of compulsory process to compel attendance of unwilling non-party witnesses"); *Perez*, 2017 WL 66874, at *4 (same). Plaintiffs fail to identify a relevant party for whom this district would be a more convenient forum. *See* Opp. at 10.

Because the convenience of non-party witnesses is often considered the most important factor in assessing a motion to transfer, the Court is persuaded here that the convenience of non-party witnesses supports Defendants' transfer request. *See Perez*, 2017 WL 66874, at *4; *see also Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 WL 6982571, at *10 (N.D. Cal. Dec. 9, 2014) (finding convenience of the non-party witnesses to be the most important factor); *Brown*, 2014 WL 715082, at *4 (same).

### 3. Feasibility of Consolidation with Other Claims

NNA argues that this factor is neutral since the Court has already consolidated the cases. Mot. at 15. The Court agrees.

---

[7] Although the parties do not brief how NML factors into the transfer analysis (and Plaintiffs did not oppose NML's joinder), it is likely that the Middle District of Tennessee would be a more convenient forum for NML, given the location of NNA's headquarters.

15

#### 4. Familiarity with Applicable Law

According to NNA, familiarity with applicable law supports transfer or is at least neutral. Mot. at 15. Although "no Plaintiff invokes Tennessee law," NNA contends that no Plaintiff "properly invokes California law." *Id*. (emphasis removed). Plaintiffs respond that NNA's argument is "premature and wrong." Opp. at 11.

The Court finds this factor to be neutral or to weigh slightly against transfer. Plaintiffs do bring claims under California law, but they also bring claims under the laws of each nonresident Plaintiff's home state. *See* CCAC ¶¶ 163–243. While the Court may have more familiarity with California law, it cannot say at this stage that it has any greater knowledge regarding the many other legal issues raised such that transfer would be inappropriate.

#### 5. Local Interest

Courts also consider the "local interest in deciding local controversies." *Perez*, 2017 WL 66874, at *4 (citation and quotations omitted); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (1986) (listing public factors relevant to convenience of forum). The Court finds that Tennessee has a greater local interest in this case. Plaintiffs only point to Plaintiff Garneau's residency and NNA's place of incorporation as connections to this forum. Opp. at 12. But they ignore that nine of the ten Plaintiffs have no connection to California, that NNA's headquarters are in Tennessee, and that it conducts its business in Tennessee. McPherson Decl. ¶ 5. Given NNA's significant contacts with Tennessee and Plaintiffs' limited contacts with California, the Court finds this factor weighs in favor of transfer.

#### 6. Differences in Cost

"While convenience to the parties' attorneys is 'not an appropriate factor for the Court to consider when deciding a motion to transfer,' the 'difference[ ] in the costs of litigation in the two forums' is relevant." *See Arreola*, 2014 WL 6982571, at *10 (citations omitted). Plaintiffs argue that transfer would unfairly shift the cost of litigation "from the large corporations with national and international presence to Plaintiffs, who are individual purchasers of automobiles from Defendants." Opp. at 13. The Court is not persuaded. Instead, the Court finds that litigation costs would likely be lower if the case were litigated in the Middle District of Tennessee, given that the

majority of the nonresident Plaintiffs and potential witnesses would be geographically closer to Tennessee than California. Plaintiffs fail to persuasively refute this point. Thus, this factor weighs in favor of transfer.

### 7. Balancing the Factors

On balance, the Court finds that this forum's lack of connection to events alleged in the CCAC and the convenience of non-party and other witnesses (often considered the most important factor) weigh in favor of transfer to the Middle District of Tennessee.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to transfer. *See* Dkt. No. 42. The Clerk of Court shall **TRANSFER** this case to the United States District Court for the Middle District of Tennessee, and close the file. The Court also **TERMINATES AS MOOT** Plaintiffs' motion to consolidate and **DENIES WITHOUT PREJUDICE** Plaintiffs' motion to appoint interim counsel. *See* Dkt. No. 12.

**IT IS SO ORDERED.**

Dated: 9/23/2019

*/s/ Haywood S. Gilliam, Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge